**PRICE v. GREENWAY et al.**

No. 9462.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 20, 1948.

Decided March 26, 1948.

Henry J. Sorenson, of Newark, N. J. (Carl T. Freggens, of Newark, N. J., on the brief), for appellant.

John A. Laird, of Hoboken, N. J. (Samuel H. Berlin, of Newark, N. J., on the brief), for Price.

Harry E. Walburg, of Newark, N. J. (Cox and Walburg, of Newark, N. J., on the brief), for Greenway and Toepleman.

Before MARIS, G O O D R I C H and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Plaintiff was riding as passenger on a bus driven by defendant Simpson, an employee of Public Service Coordinated Transport, on December 11, 1944. At Linden, New Jersey, the bus collided with a

truck, operated by Henderson Bonded Lines,[1] which was parked along the curb on the right side of the road.

Asserting a New York domicil, plaintiff filed the instant complaint on April 14, 1945. The answers of both Public Service and Henderson were in the nature of a general denial. In December, 1946, after completion of the adducing of testimony before the jury which had been impanelled, Public Service moved to dismiss on the ground that no diversity of citizenship existed between plaintiff and Public Service. Out of the presence of the jury, and with the apparent approval of Public Service,[2] Judge Smith heard extensive testimony and argument concerning the citizenship of plaintiff. At the conclusion of this inquiry into citizenship, Public Service renewed the motion to dismiss. Denying the motion, Judge Smith found plaintiff to be a citizen of Iowa.[3] Shortly thereafter, the taking of testimony on the merits being concluded, the case was submitted to the jury. The jury was unable to agree on the facts; so Judge Smith withdrew a juror and stated that a mistrial would be declared.

About three months later, this case again came up for trial. Before Judge Meaney, Public Service moved to dismiss for lack of diversity. Judge Meaney declined to hear any facts concerning plaintiff's citizenship except for those which were not brought to Judge Smith's attention and which might affect the determination. Counsel for Public Service explained what he could offer in the line of proof. Judge Meaney, ruling that the additional allegations of Public Service would not lead him to reach a different conclusion, thereupon denied the motion. A jury was then impanelled and the case proceeded to trial. The jury returned a verdict of no cause of action as to the first count, which alleged negligence of Henderson, but granted plaintiff recovery in the sum of $32,875 on the second count, which alleged negligence of Public Service. A judgment dated April 1, 1947, was entered accordingly.

Public Service moved for a new trial. An order denying that motion was entered on June 27, 1947. Public Service thereupon brought the instant appeal from the April 1, 1947, judgment, both as to Henderson and as to plaintiff. Henderson has moved to dismiss that portion of the appeal which seeks review of the judgment in favor of Henderson. Also, shortly before our hearing of the instant appeal, Public Service moved in this court "for leave to apply to the district court for leave to file an application to set aside the verdict * * * and to grant a new trial to defendants on the ground of newly discovered evidence." Both these pending motions were heard in conjunction with the appeal at bar and will be considered in the course of this opinion.

The principal question presented for our review is that of jurisdiction. If Judge Smith was justified in finding that diversity of citizenship between plaintiff and Public Service existed when the complaint was filed, and if Judge Meaney was not required to hear the issue de novo, error was not committed in limiting the offer of proof by Public Service and thereafter permitting the case to go to trial on the merits.

The evidence adduced before Judge Smith disclosed the following uncontroverted facts: Plaintiff was born and raised in Pennsylvania. She voted there in 1928. In 1930, plaintiff and her mother began to accompany plaintiff's father, whose position as field superintendent for an iron works required extensive travel, from place to place. In 1936, plaintiff's father bought a trailer. In 1939, the family moved to Newburgh, New York. Between July, 1941, and November, 1942, the trailer was in New Jersey; from November, 1942, to March, 1945, it was in Newburgh; from March, 1945, to the time of the mistrial, it was in New Jersey. Plaintiff's father not only voted in New York in 1943, but also joined

---

1 In this opinion, for purposes of convenience, the defendants will be referred to collectively as "Public Service" and "Henderson".

2 In a colloquy between Mr. Sorenson (counsel for Public Service) and Judge Smith, Mr. Sorenson said, "* * * * in view of the fact that this [citizenship of plaintiff] is a question of law for the Court to pass upon * * *."

3 Judge Smith also denied as unnecessary a motion by plaintiff to amend her complaint to allege that she was a citizen of New York, Pennsylvania, or Iowa.

a Masonic lodge and a gun club there, and transferred his union membership to a New York local. He never voted in New Jersey, nor did he transfer his lodge or union memberships to New Jersey.

Plaintiff lived in Newburgh from 1939 to 1941. In October, 1941, she took a job in New Jersey. On August 16, 1943, in New Jersey, she married a sailor named Dana E. Price, an Iowa native with approximately twenty years of continuous naval service. About one month later, plaintiff and her husband parted. At the time of trial, no divorce proceedings had been begun.

On May 16, 1944, plaintiff enlisted in the Women's Army Corps. When she made out her authorization for the purchase of war savings bonds, for the allotment of part of her military pay, and for her insurance, she gave Newburgh as her permanent home. At the time of the accident, she was stationed in Newark, New Jersey; when the instant complaint was filed, she was in the Newark Army Air Base Hospital.

Plaintiff and her father testified that neither plaintiff nor her father considered New Jersey to be their home at any time, and that neither ever intended to remain in New Jersey for the indefinite future. Moreover, plaintiff's father further stated that, eligible for retirement in a few months, he planned to settle in California, New York, or Pennsylvania. Plaintiff testified that, when the instant complaint was filed, it was her intent to remain in the military service indefinitely.

 On the basis of the testimony summarized above, we think Public Service can hardly assert that, as a matter of law, plaintiff was a citizen of New Jersey when the complaint was filed. Her domicil of origin was Pennsylvania. Whatever changes of domicil might have been effected between 1930 and August 16, 1943, it is clear that her marriage on the latter date made Iowa her domicil as a married woman. See Restatement, Conflict of Laws, § 27, Comment b, with illustrations thereto. For the instant contention of Public Service to prevail, it would have to be established that (a) between August 16, 1943 (date of marriage) and April 14, 1945 (date of filing of complaint), plaintiff chose a domicil different from that of her husband; (b) such new domicil of choice was in New Jersey; and (c) the law permitted plaintiff, while still a married woman, to choose a domicil other than that of her husband. The ruling of Judge Smith that "that domicil [Iowa] continued until suit was brought in the immediate case, and still continues" of necessity includes a finding that New Jersey was neither in law nor in fact the domicil of plaintiff on April 14, 1945. Even if we were to assume arguendo that plaintiff did have the power legally to choose another domicil subsequent to her marriage, we believe the evidence adduced indicating such new domicil to be New Jersey lacks substantiality. While plaintiff did board and work in New Jersey after her marriage, the uncontroverted testimony shows that she kept much of her personal belongings in the trailer in New York and went there "whenever she could get off." Plaintiff's parents were still living in New York when she enlisted.

Since plaintiff was in the military service when the instant complaint was filed, her domicil remained the same as it was on the date of enlistment. Restatement, Conflict of Laws, §§ 21c and 16b. We believe the record amply justifies the conclusion of Judge Smith that diversity of citizenship existed in this case.

 This leads us to the consideration of whether Judge Meaney was obliged to hear anew the testimony bearing upon plaintiff's citizenship, or whether he was justified in accepting Judge Smith's ruling. Obviously, if the first motion of Public Service to dismiss had been made prior to the impanelling of the jury by Judge Smith, his ruling would not have been affected by the later failure of the jury to agree. Public Service asks us to take the position that the receipt of the testimony after the jury had been sworn and after evidence concerning the accident had been adduced warrants a different result. We deem this contention to be both illogical and undesirable. Commercial Union of America v. Anglo-South American Bank, 2 Cir., 1925, 10 F.2d 937, 941, holding that "Judges of co-ordinate jurisdiction, sitting in the same court and in the same case, should not overrule

the decisions of each other," reversed a decision "for that reason and that reason only." The Commercial Union case has been cited repeatedly, and we can see no reason why the principle enunciated therein is not completely applicable to that at bar.

Public Service has cited a number of cases containing language to the effect that a mistrial leaves a case as though no trial had been had. We agree with that concept, and find no inconsistency between it and that guiding our decision in the instant case. Examination of those cases indicates unmistakably that they apply the principle that *jury issues* remain as though no jury had heard them; but this does not mean that *issues of law,* treated as such by the parties themselves, need or should be litigated anew.

Further, we note in passing that the offer of proof made by Public Service went only to a discussion of the marital relationship of plaintiff and her husband. Even if such evidence had been heard, we fail to see how it could have affirmatively proved that plaintiff was a citizen of New Jersey on April 14, 1945.

The motion pending in this court for leave to apply for a new trial asserts that Public Service is now in a position to prove that plaintiff deserted her husband in the latter part of 1943, and that her husband instituted uncontested divorce proceedings in Iowa in September, 1947, the divorce being granted on October 31, 1947. Even if we were to assume that the application of Public Service to reopen the question could be made almost six months after the motion in the court below for a new trial had been denied, and that Public Service could not with due diligence have discovered this evidence previously, the basis for the application is subject to the same infirmity as that of the motion to dismiss made before Judge Meaney, viz., the new evidence in no way affirmatively proves that plaintiff was a citizen of New Jersey on April 14, 1945.

We find the other contentions of Public Service, that the verdict of $32,875 was both excessive in amount and against the weight of the evidence, to be without merit. As a result of the accident, plaintiff suffered a large facial scar, major leg injuries, curvature of the spine, apparent deformity, pain, and a nervous condition. We are not prepared to say that Judge Meaney abused his discretion in refusing to reduce the sum awarded by the verdict. As to the negligence of Public Service, plaintiff testified that the bus driver was proceeding at a speed of 35 to 40 miles per hour, a motor vehicle inspector that 25 miles per hour was the maximum safe speed under the weather conditions prevailing that night, and the bus driver that the bus was on time. Plaintiff also testified that she saw the parked truck when it was approximately fifty feet ahead, and that the bus driver did not attempt to swerve out of danger until it was too late. While there was also testimony more favorable to the set of facts which Public Service sought to prove, any conflict as to the facts was a matter for the jury to determine.

Finally, it remains for us to decide whether the appeal as to Henderson must be dismissed. Plaintiff made no motion for a new trial after the jury returned the verdict in favor of Henderson; nor has plaintiff appealed from the April 1, 1947, judgment, even though the hearing on the motion of Public Service for a new trial specifically raised the question whether Henderson was a party to any motions or appeals of Public Service. Under the law of New Jersey, by the substantive law of which we are bound in deciding this case, there is no contribution between joint tortfeasors, and one defendant in such cases may not appeal a verdict favorable to another defendant. Fitzgerald v. Gore, 1929, 7 N.J.Misc. 910, 147 A. 469. Consequently, Public Service cannot make Henderson a party to this appeal.

For the reasons stated, the motion of Henderson to dismiss that portion of the appeal which seeks to join Henderson as an appellee will be granted; the judgment of the district court will be affirmed; and the application of Public Service for leave to apply to the district court for a new trial will be denied.