Eugene EISLER and Elizabeth Eisler, Plaintiffs, Appellees,

v.

Nathan STRITZLER, Defendant, Appellant.

No. 75–1331.

United States Court of Appeals, First Circuit.

Submitted Feb. 6, 1976.

Decided May 14, 1976.

As Amended May 25, 1976.

Harry A. Ezratty, San Juan, P. R., and Greg Tolson, San Francisco, Cal., on brief for defendant-appellant.

Gilberto Mayo Aguayo and Baker & Woods, Santurce, P. R., on brief for plaintiffs-appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

**150**

COFFIN, Chief Judge.

This appeal presents several questions concerning federal practice and procedure. Plaintiffs, Eugene and Elizabeth Eisler, instituted this action, relying for jurisdiction solely upon diversity of citizenship, to recover damages they allegedly suffered in various business and securities transactions with defendant, Nathan Stritzler. Defendant admitted diversity of citizenship in his pleadings, but subsequently was defaulted for failing to obey the district court's order that he give a deposition. After the district court announced its intention to enter the default judgment, defendant sought to challenge the existence of diversity jurisdiction. The district court refused to consider defendant's challenge and, apparently without holding a hearing on the amount of damages, entered a judgment for plaintiff for $87,000 plus $15,000 costs and attorney fees. Defendant now appeals, contending that the district court erred in (1) refusing to reopen the question of its jurisdiction after the default, and (2) entering and/or refusing to vacate the default judgment.

Plaintiff instituted this action in November, 1967, to recover upon four separate claims, two of which arose from a securities transaction that was consummated on May 26, 1964. On that date, plaintiffs and defendant, who were all officers, directors, and shareholders in Las Torres, Inc., a Puerto Rican corporation, entered into a contract in which plaintiffs agreed to sell their 50 percent interest in that corporation to defendant for $17,000. In Count I of their complaint, plaintiffs alleged that prior to the consummation of that agreement defendant had fraudulently, secretly, and wilfully arranged to resell plaintiffs' stock to two named individuals for $95,000. They sought to recover the $78,000 in damages they suffered by reason of the fraud and breach of defendant's fiduciary obligations. In Count II plaintiffs alleged that defendant had failed to pay $7,000 of the $17,000 purchase price. Count III need not concern us since it was dismissed voluntarily with prejudice. Count IV, which was not related to the securities transaction, alleges that

defendant breached his promise to pay certain maintenance charges on property he had leased from plaintiffs and had thereby caused plaintiffs $2,000 damages. To support the existence of diversity jurisdiction, plaintiffs stated that they were California citizens and alleged, on information and belief, that defendant was a citizen of Puerto Rico.

Defendant failed to file a timely answer to plaintiffs' complaint and was promptly defaulted. He was able to have the initial default judgment vacated and thereafter filed an answer in which he admitted the existence of diversity jurisdiction, denied the facts that would have given rise to liability, stated several affirmative defenses, and counterclaimed for over one million dollars in damages. The filing of defendant's answer proved to be the only event of any legal significance that occurred in the case for three years, until June, 1971. After the pleadings were filed, plaintiffs began what proved to be a tortuous and unsuccessful struggle to take defendant's deposition. From October, 1968, to September, 1969, defendant requested and received several continuances of the deposition. During the next eight months, matters remained in stasis, as the court agreed to delay the deposition while defendant looked for a new attorney, his first attorney having withdrawn. Finally, the court ordered defendant to give his deposition in California, in September, 1970, and to pay plaintiffs' expenses. Plaintiffs' attorney then traveled to California, but to no avail. Defendant failed to attend several prearranged meetings, and when he finally did appear at one, he refused to be deposed.

Plaintiffs then directed their energies at obtaining sanctions. These efforts proved more successful, for, after eight months, on June 21, 1971, the court ordered that defendant's answer and counterclaim be stricken and that he be defaulted. At this point, defendant finally retained counsel, who moved to vacate the default judgment. On August 5, 1971, six weeks after the order of default and almost four years after the action was instituted, defendant for the

first time challenged the existence of diversity jurisdiction. He made a Rule 12(h)(3) motion to dismiss, which was accompanied by affidavits that alleged that defendant had been a California citizen at the time the action was brought. On November 16, 1972, the district court denied this motion without considering defendant's allegations, relying upon *DiFrischia v. New York Central R. Co.*, 279 F.2d 141 (3d Cir. 1960) for the proposition that, in the absence of a showing of collusion, a defendant who admits diversity jurisdiction in his pleadings, may not dispute it thereafter.

The parties spent 1973 filing memoranda supporting and opposing defendant's motion to vacate the default order of June 21. On January 25, 1974, the court denied the motion to vacate the judgment. After an abortive appeal, which was dismissed for want of appellate jurisdiction, the matter finally dragged to its end in the spring of 1975, when the court, apparently acting on a motion for partial summary judgment, entered a final judgment for plaintiffs for $87,000 and $15,000 in costs and attorney fees.[1] Although the record is ambiguous, it does not appear that the district court held a hearing on the amount of plaintiffs' damages.

## I. Subject Matter Jurisdiction

 The first question appellant raises is whether the district court erred in following *DiFrischia* and refusing to hold a hearing to determine whether there had in fact been diversity of citizenship at the time the action was brought. Although it offends both fairness and judicial economy to allow a defendant, who best knows his own citizenship, to admit diversity jurisdiction in his answer, hamstring the process of litigation for several years by failing to cooperate during discovery, invite the imposition of a default order, and finally raise the absence of diversity jurisdiction after the default order was entered, we conclude that the district court was in error. The well

established rule in the federal courts is that subject matter jurisdiction may be litigated at any time before the case is finally decided. *See* Fed.R.Civ.P. 12(h)(3); *Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Although *Mansfield*, the leading case in the area, may not itself have established that a defendant may, in the district court, reopen jurisdictional facts that were admitted in his pleading, *see* Dobbs, *Beyond Bootstrap: Foreclosing the Issue of Subject-Matter Jurisdiction Before Final Judgment*, 51 Minn.L.Rev. 491 (1967), subsequent Supreme Court decisions interpreted *Mansfield* as establishing this broad proposition. *See Gilbert v. David*, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360 (1914) (motion to dismiss must be entertained, although seven years after the suit was instituted); *Steigleder v. McQuesten*, 198 U.S. 141, 25 S.Ct. 616, 49 L.Ed. 983 (1905) (bill in equity averred diversity; answer raised no issue as to citizenship of parties; case was referred to a master; in dictum, the Court stated that the master properly passed on the issue of jurisdiction); *Morris v. Gilmer*, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889) (complaint alleged diversity; defendant's answer raised no jurisdictional objection; subsequently, defendant filed an affidavit challenging the existence of diversity; held, even though record affirmatively showed diversity, court had to consider the affidavit). *See also Basso v. Utah Power & Light Co.*, 495 F.2d 906, 910–11 (10th Cir. 1974); *Page v. Wright*, 116 F.2d 449, 452–53 (7th Cir. 1940). It is not the province of a court of appeals to challenge such a well established rule, especially since Fed.R.Civ.P. 12(h)(3) appears to have codified it.

*DiFrischia v. New York Central R. Co., supra*, stands almost alone as a challenger to the traditional federal court practice. There the Third Circuit refused to permit a defendant, who had stipulated to the existence of diversity jurisdiction after having initially denied it, from moving to dismiss for want of jurisdiction two years after the

---

1. The $87,000 figure was arrived at as follows: $78,000 on Count I, $7,000 on Count II, and $2,000 on Count IV.

action had been instituted. The court rested its decision principally on the ground that it would not allow a party to "play fast and loose with the judicial machinery and deceive the courts." *Id.* at 144. Little authority was cited to support the court's decision, and what little there was seems inapposite.[2] Although we tend to agree that the *DiFrischia* rule is preferable to the present practice, we do not regard ourselves as free to adopt it. We note that *DiFrischia* has not proved to be a particularly generative inroad on the traditional rule, even in the Third Circuit. *See Joyce v. United States,* 474 F.2d 215 (3d Cir. 1973); *Ramsey v. Mellon National Bank & Trust Co.,* 350 F.2d 874 (3d Cir. 1965).

 Although, as we conclude below, there are alternative grounds for upholding the district court's jurisdiction as to at least one count, we must remand this case for a hearing on the existence of diversity jurisdiction at the time the action was brought as to those counts for which there is no other basis for jurisdiction. If any portions of this action are dismissed, however, the district court may, as an incident to its jurisdiction to decide jurisdiction, *cf.* P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System,* 836 (2d Ed. 1973), assess additional costs and attorney fees against defendant as to those counts that are dismissed. *See Basso v. Utah Power & Light Co., supra,* at 911. If portions of the case are dismissed after remand, it does not appear that local statutes of limitations will

preclude plaintiffs from instituting a separate action since California, the state in which subsequent litigation is most likely, follows the rule that its statute of limitation is tolled during the period in which a suit seeking identical relief is pending in a second jurisdiction. *See Yorba v. Anaheim Union Water Co.,* 41 Cal.2d 265, 270, 259 P.2d 2, 7 (1953). Otherwise, it might arguably be appropriate for the district court to consider enjoining the defendant from pleading the statute of limitations in any subsequent state court proceeding. *See ALI Study of Division of Jurisdiction Between State and Federal Courts,* § 1386(b) and pp. 453–57.

 If the district court finds on remand that there was no diversity at the time the action was brought, the entire action need not be dismissed. The record clearly discloses that the district court had the power to adjudicate at least portions of this dispute since Count I of plaintiffs' complaint states a substantial federal claim under the Securities Act of 1934. Although we normally would be disinclined to note, sua sponte on appeal, alternative grounds for the district court's jurisdiction, *cf. Lidie v. State of California,* 478 F.2d 552, 554 (9th Cir. 1973), there is no impediment to our doing so, *cf.* 28 U.S.C. § 1653, and we deem it to be entirely appropriate here where the only individual who has an interest in the dismissal of this case appears on the record to have disregarded consistently his obligation to respond to court orders.[3]

**2.** The court first relied on *Young v. Handwork,* 179 F.2d 70 (7th Cir. 1950) for the proposition that admission in a pleading could not be revoked. But *Handwork* was a case involving a suit by a receiver where the relevant bankruptcy jurisdictional statute, 11 U.S.C.A. § 46(b), specifically provided that the normal diversity requirement was not binding if there was consent. The court then stated that the case fell within the rule of *Price v. Greenway,* 167 F.2d 196 (3d Cir. 1948). But *Price* was simply a case holding that once a judge had decided the jurisdictional issue after receiving evidence, a judge of coordinate jurisdiction sitting on the same case at a later stage should not, on the same evidence, overrule the prior decision. The only case relied upon which supports the result in *DiFrischia* is *Klee v. Pittsburgh &*

*West Virginia Railway Co.,* 22 F.R.D. 252 (W.D.Pa.1958). Like *DiFrischia,* it strikes us as plainly inconsistent with the governing Supreme Court authorities.

**3.** The only impediment to affirming the district court's exercise of jurisdiction over some of the counts is that plaintiffs' complaint did not contain a statement of the grounds upon which the court's jurisdiction actually depended, as is required by Fed.R.Civ.P. 8(a), since it relied solely upon the diversity of citizenship grant of jurisdiction. This defect is not fatal. Under the curative provisions of 28 U.S.C. § 1653, the missing allegations may be supplied at any time, including on appeal. Since we conclude that the district court had federal question jurisdiction over at least portions of this lawsuit,

We think it is clear that Count I of plaintiffs' complaint presented a substantial federal claim under § 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. 240.10b–5. Its allegation that defendant fraudulently failed to disclose that third parties were willing to pay $95,000 for plaintiffs' stock bears a striking similarity to those facts which formed the basis for the imposition of liability in *Kardon v. National Gypsum Co.*, 73 F.Supp. 798, *pet. for reh'g denied*, 83 F.Supp. 613 (E.D.Pa.1947). Subsequent developments in the rules of liability under 10b–5, *see SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849–57 (2d Cir. 1968), *cert. denied sub nom. Kline v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); *Kohler v. Kohler Co.*, 319 F.2d 634, 642 (7th Cir. 1963), leave little room for doubting that the first count presented a substantial federal question over which the district court had jurisdiction under § 27 of the Securities Act of 1934, 15 U.S.C. § 78aa, and possibly 28 U.S.C. §§ 1331, 1337. *See Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

The only jurisdictional issue that remains is whether the district court could properly have exercised jurisdiction over the local law claims contained in Counts II and IV under pendent jurisdiction principles. The question of pendent jurisdiction involves two discrete inquiries: whether the district court had the power to hear the state claims, and whether, assuming power, the court should, as a matter of discretion, have considered the state claim. *See UMW v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although we are fairly certain that the district court could appropriately have exercised pendent jurisdiction over Count II, which arose from the securities transaction, and have doubts concerning the district court's power over Count IV, we think it is best to leave the district court's pendent jurisdiction over both counts open on remand.

it would be a baseless formality to require plaintiffs to amend their complaint, and we consider plaintiffs' complaint to be amended as

## II. The Default Judgment and the Assessment of Damages

We now turn to the second major issue in this appeal: the propriety of the default judgment and the apparent assessment of damages without a hearing. We conclude that, as to those claims over which the district court had jurisdiction, the default judgment was proper. However, if, as it appears, the district court determined the amount of plaintiffs' damages without holding a hearing, this was error.

To support its decision to enter a default judgment, the district court stated that defendant had acted in bad faith throughout the litigation and had, for reasons other than his inability to comply, failed to obey the district court's order to give his deposition. Under these circumstances, the district court plainly had the discretion to order that the defendant be defaulted. *See* Fed.R.Civ.P. 37(b)(2)(C), 37(d); *Local Union No. 251 v. Town Line Sand & Gravel*, 511 F.2d 1198 (1st Cir. 1975); *Atlantic Cape Fisheries v. Hartford Fire Ins. Co.*, 509 F.2d 577 (1st Cir. 1975); *Sivelle v. Maloof*, 373 F.2d 520 (1st Cir. 1967); *Kelley v. United States*, 338 F.2d 328 (1st Cir. 1964). *See also Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Trans World Airlines v. Hughes*, 449 F.2d 51, 57–63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).

Although the default judgment was proper, it would not have been correct to assess damages without a hearing. Since plaintiffs' claims were not for unliquidated damages and defendant had made an appearance, a hearing, although not a jury trial, *see Henry v. Sneiders*, 490 F.2d 315 (9th Cir. 1974), was required. *See* Fed.R. Civ.P. 55(b)(1). The default judgment on the well-pleaded allegations in plaintiffs' complaint established only defendant's liability. It was incumbent upon plaintiffs to establish the extent of the damages result-

alleging jurisdiction under 15 U.S.C. § 78aa and 28 U.S.C. §§ 1331, 1337. *See Norton v. Larney*, 266 U.S. 511, 45 S.Ct. 145, 69 L.Ed. 413 (1925).

ing from defendant's violations. *See TWA v. Hughes, supra,* 449 F.2d at 69–70; *Caribbean Produce Exchange v. Caribe Hydro-Trailer, Inc.,* 65 F.R.D. 46 (D.P.R.1974). Since the record does not disclose that a hearing was held on the amount of plaintiffs' damages, we must remand for a determination whether one was held and, if there was none, for an evidentiary hearing.[4]

\* \* \*

In summary, we hold that the district court had jurisdiction over Count I. On remand the district court must determine whether it has jurisdiction over Counts II and IV either because pendent jurisdiction principles apply or because it finds, after a hearing, that there was diversity of citizenship when the action was brought. As to the counts over which the district court had jurisdiction, the default judgment was proper, but damages must be redetermined after an evidentiary hearing if, as appears to be the case, none was held previously.

*The judgment of the District Court is vacated and the case is remanded for proceedings consistent with this opinion. No costs.*

---

4. Since the amount of the attorney fees and costs were determined on the basis of the judgment we are vacating, we think the district court should redetermine the costs and the attorney fees as well.