January 6, 1993

United States Court of Appeals
For the First Circuit

No. 92-1458

GOLDMAN, ANTONETTI, FERRAIUOLI,
AXTMAYER & HERTELL, A PARTNERSHIP,
Plaintiff, Appellee,

v.

MEDFIT INTERNATIONAL, INC., ET. AL.,
Defendants, Appellees,

HECTOR RODRIGUEZ,
Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Torruella, Circuit Judge,

Campbell, Senior Circuit Judge,

Stahl, Circuit Judge.

Hector L. Rodriguez on brief pro se.

Juan R. Marchand Quintero with whom Rivera Cestero & Marchand

Quintero and Miguel J. Rodriguez-Marxuach were on brief for appellees.

STAHL, Circuit Judge. Defendant-appellant Hector

Rodriguez ("Rodriguez" or "defendant") appeals from the entry

of a default judgment against him in the amount of $91,294.38

plus interest. We affirm.

I.

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

On June 6, 1990, the Puerto Rico law firm of

Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell

("GAFAH")1 filed a complaint against Rodriguez, Randy Smith

("Smith"), George and Lorin Croce, and Medfit International,

Inc. ("Medfit"), seeking payment of legal fees totalling

$101,294.38.2 The complaint alleged that defendants had

breached an agreement with Ferraiuoli, Axtmayer & Hertell

("GAFAH's predecessor firm") calling for plaintiff to provide

defendants with professional legal services relative to the

formation, development, and financing of a latex glove

manufacturing business.3

1. GAFAH was the original plaintiff in this case. However,
plaintiff-appellee Goldman, Antonetti, Ferraiuoli & Axtmayer
("GAFA" or "plaintiff") was substituted for GAFAH after
Hertell left the partnership in September of 1990.

2. Default was subsequently entered against Smith and Medfit
for failure to answer the complaint. The action against
George and Lorin Croce was dismissed with prejudice, pursuant
to Fed. R. Civ. P. 41(a)(1), after they agreed to pay
plaintiff $10,000.00 towards the legal fees due. None of
these defendants is a party to this appeal.

3. More specifically, plaintiff claims that it agreed to
render professional services on an hourly fee basis, and that
its fees would be payable by Rodriguez and Smith personally

-2-
2

Subsequently, Rodriguez moved to dismiss the

complaint pursuant to Rules 4(e) and 12(b)(1)-(7) of the

Federal Rules of Civil Procedure. After reviewing the

record, the district court treated Rodriguez's motion as a

motion for summary judgment, and denied it on May 8, 1991.

On August 2, 1991, the district court issued a

scheduling order setting a pretrial and settlement conference

for November 14, 1991, and a bench trial for December 16,

1991. That order warned the parties that any failure to

comply with its provisions could result in the imposition of

sanctions under Fed. R. Civ. P. 16(f). This warning was

repeated in an October 18, 1991, order which rescheduled the

pretrial and settlement conference to November 15, 1991.4

Despite these warnings, Rodriguez failed to appear for the

November 15, 1991, pretrial and settlement conference.

"until such time as financing was obtained" for their latex
glove manufacturing project. Rodriguez, on the other hand,
contends to have entered into an oral fee agreement with
plaintiff on behalf of Medfit Products Puerto Rico, Inc.

("MPPR"). Rodriguez also claims that the agreement set forth
a contingent fee arrangement, "said contingency being the
successful financing and closing of the proposed latex glove
project[,]" and denies that he is or ever was personally
responsible for payment of the legal fees owed to plaintiff.

4. The district court later continued the December 16, 1991,
trial date until January 21, 1992.

-3-
3

Consequently, the district court entered a partial judgment

dismissing Rodriguez's counterclaims and cross-claim.5

On January 17, 1992, Rodriguez telephoned the

district court's chambers to notify the court that he would

not appear for the January 21, 1992, trial. Rodriguez did

not, however, request a continuance or provide the court with

a valid justification for his anticipated absence.

Accordingly, when Rodriguez failed to appear for trial, the

district court found that he was in default. The district

court then held a bench trial on the question of damages, and

determined that plaintiff was entitled to recover $91,294.38

plus interest from Rodriguez and the previously defaulted

Smith and Medfit. The district court found all three

defendants jointly and severally liable for this judgment.

II.

DISCUSSION

On appeal, Rodriguez makes three principal

arguments: (1) that the district court erred in failing to

grant his motion to dismiss; (2) that the district court

abused its discretion in dismissing his counterclaims and

cross-claim; and (3) that the district court abused its

5. In so doing, the district court also took note of
Rodriguez's failure to prepare a pretrial order and his
failure otherwise to comply with its orders.

-4-
4

discretion in entering default judgment against him.6 We

discuss each argument in turn.

A. Rodriguez's Motion to Dismiss

Rodriguez first challenges the district court's

denial of his motion to dismiss, arguing that the district

court erroneously relied on certain allegations contained in

Jose A. Axtmayer's unsworn statement signed under penalty of

perjury to find: (1) that a genuine, material factual dispute

existed over the substance of the oral fee agreement; (2)

that Rodriguez was subject to the in personam jurisdiction of

the district court; and (3) that MPPR was not an

indispensable party under Fed. R. Civ. P. 19(b). We disagree

with Rodriguez's contentions.

1. Standard of Review

There is no dispute that Rodriguez's motion to

dismiss was properly treated as a motion for summary

judgment. See Fed. R. Civ. P. 12(c). Appellate review of a

district court order denying a motion for summary judgment is

plenary. Federal Deposit Ins. Corp. v. World Univ. Inc., No.

6. Rodriguez also litters his brief and reply brief with
one-sentence allegations of error that are accompanied by
neither argument nor supporting authority. Time and time
again, we have warned litigants that "issues raised in a
perfunctory manner, unaccompanied by some effort at developed
argumentation, are deem waived." See, e.g., Elgabri v.

Lekas, 964 F.2d 1255, 1261 (1st Cir. 1992) (quoting United

States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied,

494 U.S. 1082 (1990)). Accordingly, we do not address the
merits of Rodriguez's one-sentence arguments.

-5-
5

92-1389, slip op. at 4 (1st Cir. Oct. 22, 1992). Summary

judgment shall be granted only when the record demonstrates

that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). The party moving for

summary judgment "bears both the initial and the ultimate

burden of demonstrating its legal entitlement to summary

judgment." Lopez v. Corporacion Azucarera de Puerto Rico,

938 F.2d 1510, 1516 (1st Cir. 1991). Furthermore, like the

district court, we "`must view the entire record in the light

most hospitable to the party opposing summary judgment,

indulging all reasonable inferences in that party's favor.'"

Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir.

1991) (citing Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st

Cir. 1990)), cert. denied, 112 S. Ct. 2965 (1992).

"Nonetheless, the nonmovant cannot content himself with

unsupported allegations; rather, he must set forth specific

facts, in suitable evidentiary form, in order to establish

the existence of a genuine issue for trial." Rivera-Muriente

v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992).

2. The Unsworn Statement

Axtmayer's unsworn statement signed under penalty

of perjury was submitted in support of plaintiff's

-6-
6

opposition to Rodriguez's motion to dismiss.7 Rodriguez

argues that the district court's reliance on the allegations

contained in Axtmayer's unsworn statement constitutes an

abuse of discretion because the statement fails to conform to

the requirements of Fed. R. Civ. P. 56(e). We disagree.

Under federal law, an unsworn statement signed

under penalty of perjury may be used, in lieu of a sworn

statement or affidavit, to support or oppose a motion for

summary judgment. See 28 U.S.C. 1746;8 see also Pfeil v.

7. Axtmayer's statement alleges, inter alia, that Rodriguez

and Smith retained GAFAH's predecessor firm to represent them
in connection with the establishment of a latex glove
manufacturing facility in Puerto Rico. Axtmayer further
alleges that the firm agreed to provide the professional
services requested "on a per hour fee basis to be invoiced
monthly and payable by Rodriguez and Smith until such time as
financing was obtained for the project." Finally, Axtmayer
states that after Medfit Products of Puerto Rico was
incorporated in Puerto Rico, Rodriguez and Smith agreed that
they, along with Medfit and George and Lorin Croce, "were
[the firm's] clients in their individual capacities and were
personal[ly], jointly and severally responsible for the
payment of the services rendered and expenses incurred by
[the firm] as a result of their representation."

8. In relevant part, 28 U.S.C. 1746 provides:

Wherever, under any law of the United States or under
any rule, regulation, order, or requirement made
pursuant to law, any matter is required or permitted to
be supported, evidenced, established, or proved by the
sworn declaration, verification, certificate,
statement, oath, or affidavit, in writing of the person
making the same . . . such matter may, with like force
and effect, be supported, evidenced, established, or
proved by the unsworn declaration, certificate,
verification, or statement, in writing of such person
which is subscribed by him, as true under penalty of
perjury, and dated, in substantially the following
form:

-7-
7

Rogers, 757 F.2d 850, 859 (7th Cir. 1985) (holding that an

affidavit failing to satisfy the "technical, non-substantive

requirements of execution" may be considered as part of a

party's opposition to a motion for summary judgment provided

the affidavit complies with 28 U.S.C. 1746), cert. denied,

475 U.S. 1107 (1986); Davis v. Frapolly, 756 F. Supp. 1065,

1067 (N.D. Ill. 1991) (holding that unsworn statements signed

under penalty of perjury may be considered as evidence in

support of a motion for summary judgment). Because

Axtmayer's unsworn written statement meets the requirements

of 28 U.S.C. 1746, the district court was entitled to give

it the same weight as an affidavit when it considered

defendant's motion. Therefore, because Axtmayer's unsworn

statement established the existence of a genuine, material

factual dispute concerning the substance of the parties' oral

fee agreement, the district court properly denied Rodriguez's

motion to dismiss.

3. In Personam Jurisdiction

As noted, Rodriguez also challenges the district

court's ruling that it had personal jurisdiction over him.

. . . .

If executed within the United States, its
territories, possessions, or commonwealths:
"I declare (or certify, verify, or state)
under penalty of perjury that the foregoing
is true and correct. Executed on (date).

(Signature)".

-8-
8

In so doing, Rodriguez first contends that the district court

should not have considered the allegations in Axtmayer's

statement when it decided the question of in personam

jurisdiction.9 However, Rodriguez's argument is undermined

by the fact that a district court may go beyond the four

corners of the pleadings and consider materials presented in

support of a motion to dismiss for lack of in personam

jurisdiction. See American Express Int'l, Inc. v. Mendez-

Capellan, 889 F.2d 1175, 1178 (1st Cir. 1989) (affidavits

presented on a motion to dismiss for lack of in personam

jurisdiction, which was converted to a motion for summary

judgment, deemed to be "available for either motion").

Accordingly, the district court committed no error in

considering the Axtmayer statement. Rodriguez's attack on the

merits of the district court's ruling is equally unavailing.

"It is well established that in diversity cases, `the

district court's personal jurisdiction over a nonresident

defendant is governed by the forum's long-arm statute.'"

Pizarro v. Hoteles Concorde Int'l, C.A., 907 F.2d 1256, 1258

(1st Cir. 1990) (quoting Mangual v. General Battery Corp.,

710 F.2d 15, 19 (1st Cir. 1983)). Rule 4.7(a)(1) of the

Puerto Rico Rules of Civil Procedure, the Commonwealth's

9. Axtmayer's statement asserts that Rodriguez personally
initiated the negotiations which led to the representation
and fee agreements with GAFAH's predecessor firm in a 1987
visit to the firm's offices.

-9-
9

long-arm statute, allows Puerto Rico courts to assert

personal jurisdiction over a non-resident defendant "if the

action or claim arises because said person . . . [t]ransacted

business in Puerto Rico personally or through an agent . . .

." P.R. Laws Ann. tit. 19, App. III, R. 4.7(a)(1) (1983);

see also Pizarro, 907 F.2d at 1258. However, for such an

assertion of jurisdiction to be permissible, two additional

tests must be met. First, plaintiff's cause of action "must

arise out of the defendant's action within the forum state."

Id. (quoting Escude Cruz v. Ortho Pharmaceutical Corp., 619

F.2d 902, 905 (1st Cir. 1980)). In addition, of course, the

contacts among the non-resident defendant, forum, and cause

of action must rise to a level where the due process

requirements of "fair play and substantial justice," see

International Shoe Co. v. Washington, 326 U.S. 310, 316

(1945), are met. See id.10

10. The Supreme Court has elaborated upon this "minimum
contacts" rule:

The application of [the minimum contacts]
rule will vary with the quality and
nature of the defendant's activity, but
it is essential that there be some act by
which the defendant purposefully avails
itself of the privilege of conducting
activities within the forum state, thus
invoking the benefits and protections of
its laws.

Hanson v. Denckla, 357 U.S. 235, 253 (1958).

-10-
10

Here, there is undisputed record evidence that

Rodriguez initiated and personally participated in the

negotiations which led to the fee agreement which is the

subject of this litigation, and that at least some portion of

these negotiations took place at GAFAH's predecessor firm's

offices in Puerto Rico. Thus, it is clear that Rodriguez is

subject to the reach of 4.7(a)(1) and that the cause of

action arose out of Rodriguez's action in the forum state.

Furthermore, the record reveals that Rodriguez was personally

and continuously involved in plaintiff's efforts to assist in

the formation, development, and financing of MPPR, which was

to be a Puerto Rico corporation.11 This fact, when coupled

with Rodriguez's solicitation and subsequent retention of

plaintiff, leaves little doubt that Rodriguez purposefully

availed himself "of the privilege of conducting activities

within the forum . . ., thus invoking the benefits and

protections of its laws." Hanson, 357 U.S. at 253.

Therefore, we find no error in the district court's

conclusion that its assertion of in personam jurisdiction

over Rodriguez would not offend either Puerto Rico's long-arm

statute or the Due Process Clause of the United States

Constitution.

4. Rule 19(b)

11. These activities took place over a two-year span and
allegedly generated the $101,294.38 of unpaid fees and
expenses plaintiff is seeking.

-11-
11

Finally, Rodriguez argues that the district court

erred in refusing to grant his motion to dismiss on the basis

of plaintiff's failure to join MPPR as a non-diverse

indispensable party under Fed. R. Civ. P. 19(b).12 This

argument does not require extended discussion.

The district court ruled that because defendants

and the non-diverse MPPR were alleged to be jointly and

severally liable for the legal fees owed plaintiff, joinder

of MPPR was not mandatory, but was merely permissive. The

district court's ruling on this issue is patently correct.

See Temple v. Synthes Corp., Ltd., 111 S. Ct. 315, 316 (1990)

(citing to the Advisory Committee Notes to Rule 19(a), which

explicitly state that "a tortfeasor with the usual `joint-

and-several' liability is merely a permissive party to an

action against another with like liability."). Accordingly,

we find no error in the district court's refusal to grant

Rodriguez's motion insofar as it is premised on Fed. R. Civ.

P. 19(b).

B. Dismissal of Rodriguez's Counterclaims and Cross-claim

As a result of Rodriguez's failure to appear at the

scheduled pretrial and settlement conference, his failure to

prepare a pretrial order, and his failure to otherwise comply

with the court's orders, the district court dismissed with

12. Joinder of MPPR, a Puerto Rico corporation, would have
destroyed the district court's subject matter jurisdiction in
this diversity case.

-12-
12

prejudice Rodriguez's counterclaims and cross-claim. The

dismissal was premised upon Fed. R. Civ. P. 16(f).13

Rodriguez claims that the district court's imposition of

these sanctions constitutes an abuse of discretion. Again,

we disagree.

As an initial matter, we note that "[t]he proper

performance of the case-management function requires that the

trial court be allowed great latitude in applying Rule

16(f)." Veranda Beach Club v. Western Surety Co., 936 F.2d

1364, 1370 (1st Cir. 1991); see also Barreto v. Citibank,

N.A., 907 F.2d 15, 16 (1st Cir. 1990) (taking note of the

"well established principle that discovery orders, other pre-

trial orders, and, indeed, all orders governing the

management of a case are enforceable under pain of sanction

13. In pertinent part, Fed. R. Civ. P. 16(f) provides:

If a party or party's attorney fails to obey
a scheduling or pretrial order, or if no
appearance is made on behalf of a party at a
scheduling or pretrial conference, or if a
party or party's attorney is substantially
unprepared to participate in the conference,
or if a party or party's attorney fails to
participate in good faith, the judge, upon
motion or the judge's own initiative, may
make such orders with regard thereto as are
just, and among others any of the orders
provided in Rule 37(b)(2)(B),(C),(D). . . .

The orders provided for in Fed. R. Civ. P. 37(b)(2)
include orders "striking out pleadings or parts thereof, or
staying further proceedings until the order is obeyed, or

dismissing the action or proceeding or any part thereof, or

rendering a judgment by default against the disobedient party."
Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

-13-
13

for unjustifiable violation."). As such, we review a

district court's selection and imposition of sanctions only

for abuse of discretion. See National Hockey League v.

Metropolitan Hockey Club, 427 U.S. 639, 642 (1976); Veranda

Beach Club, 936 F.2d at 1370.

We also recognize that "`dismissal with prejudice

is a harsh sanction which runs counter to our strong policy

favoring the disposition of cases on the merits.'" Marx v.

Kelly, Hart & Hallman, P.C., 929 F.2d 8, 10 (1st Cir. 1991)

(quoting Figueroa Ruiz v. Alegria, 896 F.2d 645, 647 (1st

Cir. 1990)). Nonetheless, the sanction of dismissal "must be

available to the district court in appropriate cases, not

merely to penalize those whose conduct may be deemed to

warrant such a sanction, but to deter those who might be

tempted to such conduct in the absence of such a deterrent."

National Hockey League, 427 U.S. at 643; see also Marx, 929

F.2d at 10; Barreto, 907 F.2d at 16. Conduct which may

warrant dismissal of a claim with prejudice includes

"`disobedience of court orders, [disregarding] warnings,

[and] contumacious conduct . . . .'" Figueroa Ruiz, 896 F.2d

at 648 (quoting Cosme Nieves v. Deshler, 826 F.2d 1, 2 (1st

Cir. 1987)).

As detailed above, the district court issued two

separate orders which notified the parties as to the date and

time of the November 15, 1991, pretrial and settlement

-14-
14

conference. In addition, both orders provided explicit

warnings to the parties that failure to comply could result

in the imposition of sanctions under Fed. R. Civ. P. 16(f).

Despite ample notice and repeated warnings, Rodriguez did not

attend the pretrial and settlement conference. Nor did he

provide the court with either proper notice that he would not

appear or a compelling justification for his absence. As

such, we cannot say the district court abused its discretion

in construing Rodriguez's absence as "a willful disregard of

the Court's procedure and time" and therefore dismissing his

counterclaims and cross-claim.14

C. Default Judgment

On February 28, 1992, the district court entered

default judgment against Rodriguez for his failure to appear

at trial. Rodriguez challenges this order, arguing that the

14. We do note that on November 14, 1991, at 3:22 p.m.,
Rodriguez attempted, via telecopier, to file with the

district court a motion for an extension of time in which to
compromise the controversy. However, the record indicates
that defendant's motion was not actually received and filed
by the district court until November 15, 1991, at 3:14 p.m.,
after the scheduled 2:30 p.m. conference had already taken

place. Rodriguez also claims that at the same time he
transmitted his motion, he notified the court that he would
not be attending the conference scheduled for the following
day. However, even were we to credit this assertion, it
would not provide us with a sufficient basis for determining
that the district court's actions were an abuse of
discretion.

-15-
15

entry of default constitutes an abuse of discretion both

because (1) the district court failed to give him notice

pursuant to Fed. R. Civ. P. 55(b)(2), and (2) plaintiff

failed to prove its case on the merits at trial.15 Here

too, Rodriguez's arguments are unavailing.

In pertinent part, Fed. R. Civ. P. 55 (b)(2)

provides: "[If] the party against whom judgment by default

is sought has appeared in the action, the party . . . shall

be served written notice of the application for judgment at

least 3 days prior to the hearing on such application."

(Emphasis supplied). By its very terms, therefore, Rule

55(b)(2) does not apply where, as here, there is no motion

for default pending and where the court has, on its own

motion, found a party to be in default for a failure to

appear. Pertinent authority supports such a construction of

the Rule. See Anilina Fabrique de Colorants v. Aakash

Chemicals and Dyestuffs, Inc., 856 F.2d 873, 877 (7th Cir.

1988) (notice requirement of Rule 55(b)(2) does not apply

where district court entered default order on its own motion)

15. Rodriguez also objects to the holding of a bench trial
despite the fact that he had properly requested a jury trial
in his answer. However, "after a default judgment has been
entered under Fed. R. Civ. P. 37(b)(2), a party has no right
to jury trial under either Fed. R. Civ. P. 55(b)(2), . . . or
the Seventh Amendment." Adriana Int'l Corp. v. Thoeren, 913

F.2d 1406, 1414 (9th Cir. 1990), cert. denied, 111 S. Ct.

1019 (1991); see also Eisler v. Stritzler, 535 F.2d 148, 153

(1st Cir. 1976) (holding that after entry of a default
judgment, a hearing, but not a jury trial, is required to
assess damages).

-16-
16

(citing Tolliver v. Northrop Corp., 786 F.2d 316, 318 (7th

Cir. 1986)); see also Ringgold Corp. v. Worrall, 880 F.2d

1138, 1141-42 (9th Cir. 1989) (notice requirement of Rule

55(b)(2) does not apply where party is defaulted for failing

to attend the first day of a trial scheduled months before);

Brock v. Unique Racquetball and Health Clubs, Inc., 786 F.2d

61, 65 (2d Cir. 1986) (notice requirement of Rule 55(b)(2)

does not apply where party is defaulted for defense counsel's

and parties' failure to appear at a trial that already has

commenced). Accordingly, Rule 55(b)(2) does not provide us

with a basis for setting aside the district court's entry of

default.16

Rodriguez also argues that the entry of default

against him was an abuse of discretion because plaintiff

failed to prove its case on the merits at trial. Defendant's

argument ignores the maxim that an entry of a default against

a defendant establishes the defendant's liability. See

Brockton Savings Bank v. Peat, Marwick, Mitchell & Co., 771

F.2d 5 (1st Cir. 1985) ("[T]here is no question that, default

16. Our refusal to apply the notice requirement of Rule
55(b)(2) to this case can hardly be viewed as unfair to
Rodriguez. Clearly, the purpose of Rule 55(b)(2) is to make
certain that a defaulted party is on notice of the
possibility that a default judgment might be entered against
him/her. Here, Rodriguez admitted in an affidavit to his
awareness "that the court had positioned itself to hold
[Rodriguez] liable by default or otherwise" at the time he

failed to appear for trial. Thus, the situation against
which Rule 55(b)(2) guards was not present in this instance.

-17-
17

having been entered, each of [plaintiff's] allegations of

fact must be taken as true and each of its [] claims must be

considered established as a matter of law."), cert. denied,

475 U.S. 1018 (1986); see also United States v. DiMucci, 879

F.2d 1488, 1497 (7th Cir. 1989) ("As a general rule, a

default judgment establishes, as a matter of law, that

defendants are liable to plaintiff as to each cause of action

alleged in the complaint."); Eisler v. Stritzler, 535 F.2d

148, 153 (1st Cir. 1976) (noting that "[t]he default judgment

on the well-pleaded allegations in plaintiff's complaint

established . . . defendant's liability."). Thus, the

district court's entry of default established Rodriguez's

liability for the legal fees due.

III.

CONCLUSION

For the foregoing reasons, the challenged district

court orders are affirmed.

Affirmed. Double costs to appellee.17
Affirmed. Double costs to appellee.

17. We award double costs in response to appellee's well-
grounded request for sanctions under Fed. R. App. P. 38.

-18-
18