Nancy B. BISSELL and Robert G. Bissell, M.D., Plaintiffs,

v.

The BREAKERS BY–THE–SEA, R & E Associates, Inc. and Paul Provencher, Defendants.

No. Civ. 96–191–P–H.

United States District Court, D. Maine.

Feb. 3, 1998.

---

John H. O'Neil Jr., Smith, Elliott, Smith & Garmey, P.A., Saco, ME, Terrence Garmey, Smith, Elliott, Smith & Garmey, P.A., Portland, ME, for Plaintiffs.

Martha C. Gaythwaite, Friedman, Babcock & Gaythwaite, Portland, ME, for Defendants Breakers By–The–Sea & R & E Assoc.

Mark E. Dunlap, Norman, Hanson & Detroy, Portland, ME, for Defendant Paul Provencher.

## MEMORANDUM STATEMENT ON PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT[1]

HORNBY, Chief Judge.

"If the law supposes that, ... the law is a ass—a idiot," proclaimed Mr. Bumble. Charles Dickens, *The Adventures of Oliver Twist* (Oxford Univ. Press 1987) (1838). Controlling precedent here unfortunately gives credence to this infamous Dickens statement. If the Court of Appeals chooses to remand this lawsuit, I will have to dismiss it for lack of diversity subject matter jurisdiction even though the defendants have already won a jury verdict.

The plaintiffs filed their lawsuit in federal court in 1996. They alleged in their Complaint that they were residents of St. Thomas, U.S. Virgin Islands, that the defendants were all residents of Maine, and that the court therefore had jurisdiction by virtue of diversity of citizenship. *See* 28 U.S.C. § 1332. (The U.S. Virgin Islands constitute a United States territory and are treated as a State for purposes of section 1332. *See* 28 U.S.C. § 1332(d).)· The various defendants admitted their own Maine citizenship and either admitted the plaintiffs' citizenship or claimed no knowledge. Thereafter, the parties engaged in full discovery about the merits of the lawsuit and vigorous motion practice that required judicial rulings. They conducted a hotly contested four day trial on the merits before a jury in March, 1997. After four and one half hours of deliberation, the jury awarded the defendants a complete verdict. Although there was bitter post-trial motion practice followed by written judicial opinions, the defendants' verdict ultimately survived. The plaintiffs then appealed to the First Circuit Court of Appeals. Only then, while writing their briefs to upset the defendants' verdict, did the plaintiffs' lawyers discover that the plaintiffs actually did not live in St. Thomas after all. Instead, they learned, the husband worked and the couple received mail in St. Thomas (their 1995 tax return used the St. Thomas address), but they have lived at all relevant times in Tortola, an adjacent island that hap-

---

**1.** *See Commonwealth of Puerto Rico v. SS Zoe*     *Colocotroni,* 601 F.2d 39, 42 (1st Cir.1979).

pens to be part of the British Virgin Islands. Two of the defendants express skepticism about the plaintiff Nancy Bissell's recent affidavit to that effect because the plaintiffs have referred variously to homes in Maine, St. Thomas and Tortola during these proceedings. But jurisdiction can be maintained only if the plaintiffs had their domicile in St. Thomas when they filed the Complaint. (Diversity jurisdiction is destroyed if they lived in either Maine or Tortola). Because the defendants have advanced no evidence or argument that St. Thomas was more than an office or mailing address for the plaintiffs (and the defendants have the burden of proof now, since they are attempting to sustain jurisdiction, *Bank One, Texas, N.A. v. Montle,* 964 F.2d 48, 50 (1st Cir. 1992)), there is no basis to conclude that St. Thomas was the plaintiffs' domicile and no reason to hold an evidentiary hearing on disputed facts.

■ If the plaintiffs' actual domicile in Tortola had been known at the outset, diversity jurisdiction could never have been claimed successfully. American citizens who actually reside a foreign country do not qualify for diversity jurisdiction. *See, e.g., Kamel v. Hill–Rom Co.,* 108 F.3d 799, 805 (7th Cir.1997) ("for diversity purposes, an expatriate is deemed neither an alien nor a citizen of any State."). But at this late date in the lawsuit the defendants complain bitterly that it is unfair to take away their winning verdict.

■ Nevertheless, according to the First Circuit, "[t]he well established rule in the federal courts is that subject matter jurisdiction may be litigated at any time before the case is finally decided." *Eisler v. Stritzler,* 535 F.2d 148, 151 (1st Cir.1976). That description of the state of precedent is still accurate. *See, e.g., Wells Real Estate v. Greater Lowell Bd. of Realtors,* 850 F.2d 803, 813 (1st Cir.1988) ("[the *Eisler* ] rule holds that the *absence* of subject matter jurisdiction can be raised at any time in the litigation, regardless of waiver or stipulation."); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed.1990). Indeed, *Di Frischia v. New York Central Railroad Co.,* 279 F.2d 141 (3d Cir.

1960), the only contrary ruling that the First Circuit recognized in *Eisler,* has now itself been overruled. *See Rubin v. Buckman,* 727 F.2d 71, 72 (3d Cir.1984) ("Di Frischia can no longer be regarded as the law of this circuit."). The rule applies even to appeals. Here, the appeal on the merits is still pending, but the Court of Appeals has asked me under *Commonwealth of Puerto Rico v. SS Zoe Colocotroni,* 601 F.2d 39 (1st Cir.1979), to say how I would rule on the plaintiffs' Rule 60(b) motion for relief from judgment for lack of subject matter jurisdiction (a motion not even filed until after the plaintiffs appealed).

The First Circuit believed that its ruling in *Eisler* —permitting a litigant to attack jurisdiction after he had a default judgment entered against him—offended "both fairness and judicial economy." *Eisler v. Stritzler,* 535 F.2d at 151. The same is true here. From the outset, these plaintiffs have claimed a residence that entitled them to federal jurisdiction. The defendants had no reason to disbelieve them. (These are all excellent lawyers and I find wholly credible the plaintiffs' lawyers' assertion—and the defendants' lawyers' acceptance—that at all times until the appeal the plaintiffs' lawyers believed their clients truly were residents of St. Thomas. At least since Congress concerned itself with unnecessary cost and delay in federal litigation by enacting the Civil Justice Reform Act of 1990, 28 U.S.C. § 471 *et seq.* (1993 & Supp.1997) (now sunsetted in large part), lawyers in federal court have been strongly urged *not* to pursue issues that are not seriously disputed.) Thousands upon thousands of dollars in attorney fees have now been spent, federal jurors have been inconvenienced, federal taxpayer dollars have been consumed and the court has devoted substantial time to this case (at the expense of other matters). Yet the end result is that all that was wasted time and money—the defendants' federal jury verdict will be torn up, judgment will be vacated and the plaintiffs will get the chance to try again in state court.

The plaintiffs say that the defendants' lawyers or the judge should have noticed the lack of diversity jurisdiction earlier. At a

pretrial deposition, Nancy Bissell, one of the plaintiffs, said that she and her husband had lived in Tortola in the British Virgin Islands since January, 1995. (The Complaint in this case was filed in June, 1996.) The defendants' lawyers were present at the deposition to hear her statement, but there is no way that the judge could have known of it. At trial, references to the fact that the plaintiffs resided in Tortola were made in the opening statements, in the plaintiffs' testimony and in the closing statement of one of the defendants' lawyers. But the focus of these remarks was on the nature of the *damages* that the plaintiffs had allegedly suffered. This trial judge has never been to the Virgin Islands, is not familiar with their geography and was listening for error on the disputed issues concerning liability or damages, not looking for how the diversity rules for American citizens living abroad might upset the lawsuit. It is true that if the verdict had been for the plaintiffs and if the defendants had later become aware of the jurisdictional defect, they undoubtedly would have tried to use it to upset the plaintiffs' verdict. Moreover, the defendants' lawyers are paid to look for jurisdictional problems and their failure to recognize them makes this situation partly their fault. The result is, therefore, perhaps rough fairness under a sporting theory of litigation, but at the end of a case it hardly makes sense from the taxpayers', the citizens' or the parties' point of view and, most importantly, from the point of view of justice.

There is no escape under current precedents. Although the defendants argue *res judicata*, this is not a collateral attack; this is the same case, the appeal is still pending, and *res judicata* and collateral estoppel principles simply do not apply. More pertinent might be law of the case, but law of the case does not overcome the doctrine that subject matter jurisdiction is always subject to reexamination. Finally, the defendants' waiver argument is trumped by the doctrine that the parties cannot "confer" jurisdiction upon a federal court.

■ When all is said and done, the talismanic overtones of this 19th century rule, *see Mansfield, C. & L.M. Ry. Co. v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884), still prevail over all logical argument. (For a satirical treatment of the issue, see Robert S. Ryan, *The Dajongi Experience: A Comparative Study in Federal Jurisdiction,* 18 Stan. L.Rev. 451 (1966)). The mantra is that federal courts are courts of "limited" jurisdiction, and that parties cannot create jurisdiction by simply "conferring" it on the court. *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 18 n. 17, 71 S.Ct. 534, 95 L.Ed. 702 (1951) (quoting *People's Bank of Belville v. Calhoun,* 102 U.S. 256, 260–61, 26 L.Ed. 101 (1880)); 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3522 (2d ed.1984). Therefore, when a factual premise for jurisdiction turns out to be unsupported at any point—no matter how late—a losing party can claim successfully that its case must be dismissed because the earlier pleadings or statements could not improperly "confer" jurisdiction on the federal court.

■ Unfortunately, however, courts in real life can deal only with assertions and admissions or denials of facts, not some elusive "ultimate" truth or reality, even for jurisdiction. If a fact is undisputed, a judge accepts it, and does not become an inquisitor to conduct his or her own investigation. It is easy to agree that parties should not be allowed to connive or collude to create federal jurisdiction. But when all participants proceed on good faith erroneous factual beliefs that affect jurisdiction and the *merits* of a dispute are decided (which is what the parties, as opposed to the lawyers and judges, really care about), it is absurd to say, after a full trial and jury verdict, that all has been pointless because the parties entered the wrong courthouse. *See, e .g.,* The American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts, 64–66, 366–74 (1969) (proposing that in most cases litigants should not be allowed to attack federal court jurisdiction after the trial has begun). Jurisdictional rules are gatekeeping rules. They should be easy to understand and sensibly enforced so that parties (the important participants in the justice system) can have a final decision without unnecessary expense. As one academic commentator has observed, the rule that I would

have to apply here on remand "is morally wrong. It is unfair to the winning party.... Further, it is bad administration of justice; it is inefficient as well as unfair, and it quite properly raises grave public doubts about the judicial system." Dan B. Dobbs, *Beyond Bootstrap: Foreclosing the Issue of Subject–Matter Jurisdiction Before Final Judgment,* 51 Minn.L.Rev. 491, 492 (1967). But under the governing law, on remand I would grant the Rule 60(b) motion and dismiss the lawsuit without prejudice for lack of subject matter jurisdiction.[2]

---

**2.** I could not even assess costs and attorney fees against the plaintiffs. Under the "inherent equitable power" of the court, I can only assess costs to a party "when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973) (quoting 6 J. Moore, Federal Practice 54.77(2), p. 1709 (2d ed.1972)). While the First Circuit authorized the District Court to assess "additional costs and attorneys fees" against the party that moved to dismiss the case in *Eisler v. Stritzler,* 535 F.2d 148, 152 (1st Cir.1976), there was abundant evidence there of bad faith or vexatious conduct. For authority, the First Circuit relied upon *Basso v. Utah Power and Light Co.,* 495 F.2d 906 (10th Cir.1974), which acknowledged that a federal court may "award attorneys' fees as a punitive measure where an action or defense has been brought or maintained *in bad faith." Id.* at 911 (emphasis added). The plaintiffs and their lawyers may have been careless in their assertion of diversity jurisdiction here, but there is no evidence that they proceeded in bad faith, vexatiously, wantonly or for oppressive reasons. The request by two of the defendants for the court to impose sanctions under 28 U.S.C. § 1927 for multiplying the proceedings also fails because the plaintiffs' conduct was not "more severe than mere negligence, inadvertence, or incompetence." *Cruz v. Savage,* 896 F.2d 626, 632 (1st Cir.1990).