**Geoffrey HONNEUS, Plaintiff,**

v.

**George DONOVAN, Defendant.**

**Civ. A. No. 76-4424-G.**

United States District Court,
D. Massachusetts.

Jan. 27, 1982.

Geoffrey Honneus, pro se.

George P. Donovan, pro se.

Joel F. Pierce, Morrison, Mahoney & Miller, Boston, Mass., for Oteri & Weinberg.

Theodore Dinsmoor, Jean Farrington, Gaston Snow & Ely Bartlett, Boston, Mass., for Troy.

## MEMORANDUM AND ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT

GARRITY, District Judge.

Defendant's motion for relief from judgment raises, either explicitly or implicitly, two issues. First, under what circumstances may a court grant relief from a default judgment on the grounds that the court lacked subject matter jurisdiction over the action? Second, to what extent, if at all, may a prisoner change his domicile while incarcerated? Before addressing those questions we recite briefly relevant procedural history of this action.

Plaintiff Geoffrey Honneus brought this suit against George Donovan, his former brother-in-law, and three other defendants, all members of the Massachusetts bar, alleging various counts of legal malpractice sounding in contract and tort. Honneus alleged that he was a citizen of Florida and defendants of Massachusetts, and that accordingly the action was within the court's diversity jurisdiction. Although the other defendants filed answers and motions and engaged actively in discovery, Donovan, following his *pro se* appearance on February 10, 1976, rested. He filed neither a respon-

sive pleading nor any motion, initiated no discovery, and consistently ignored the discovery requests plaintiff and two codefendants directed to him. A notice of default was issued to Donovan on January 26, 1978 and a notice of delinquency on May 7, 1979. Donovan did not respond to these, or to the court's orders of June 16, 1979 that he respond to discovery attempts. On May 19, 1980 plaintiff moved for entry of default judgment. The court heard plaintiff's motion on July 8, 1980—although notice of the hearing was sent to all parties on June 18, 1980, Donovan did not attend—and on August 21, 1980 the court issued and entered an Order for Judgment by Default against Donovan for $16,500 plus interest from the date the complaint was filed. The court entered judgment for plaintiff in the amount of $16,500 plus interest of $4,865, and accordingly issued an execution for $21,365, both on November 7, 1980. Two defendants having been dismissed by stipulation on November 3, 1980, and the court having approved a stipulation dismissing the case against the third, the case was closed on November 17, 1980.

On August 20, 1981, one year less a day from the court's entry of default judgment against him, Donovan moved for relief from judgment. He argued that Honneus had perpetrated a fraud upon the court by claiming that he was a citizen of Florida, and thus of diverse citizenship, rather than a citizen of Massachusetts. The affidavits submitted regarding, and hearing held on, Donovan's motion revealed the following.

Honneus at the time he was convicted, was a citizen of Massachusetts, where he had lived with his wife. He was thereafter sent in 1974 to the Federal Penitentiary in Lewisburg, Pennsylvania. In October, 1975, Mrs. Honneus moved to Florida and established her domicile there. Honneus apparently intended to join his wife there upon his release, a plan her affidavit of March 16, 1977 confirms, and accordingly described himself in the complaint as a citizen of Florida. Honneus and his wife apparently maintained a joint bank account in Clearwater Beach, Florida and funded it, at least in part, with money plaintiff's father sent plaintiff's wife. In May, 1977, Honneus and his wife had a falling-out. Upon his release from prison he, therefore, went to Massachusetts rather than to Florida.

Honneus claims that his intention to join his wife in Florida, coupled with maintenance of a joint bank account there which his father helped fund, establish Florida as his domicile for diversity purposes. Although we do not doubt that he intended, when he brought the suit, to join his wife in Florida, we do not believe this is sufficient to establish Florida as his domicile of choice.

A change in domicile requires a concurrence of physical presence at the new place and the intention to remain there indefinitely. *Gilbert v. David*, 1915, 235 U.S. 561, 569, 35 S.Ct. 164, 166, 59 L.Ed. 360; *Sadat v. Mertes*, 7 Cir. 1980, 615 F.2d 1176, 1180; *Hawes v. Club Ecuestre El Comandante*, 1 Cir. 1979, 598 F.2d 698, 701. Both factors must exist, and they must do so at the same time, for a change to occur.[1] Although Honneus intended to relocate in Florida, he never became a Florida domiciliary since that intent never coincided with the requisite physical presence.

As a prisoner, Honneus could not, of course, travel to Florida to be present there. But the fact of confinement does not relax the rules for change of domicile. On the contrary, prisoners traditionally have not

---

1. Courts have occasionally emphasized the importance of a person's intention in determining domicile for diversity purposes. See, e.g., *Hawes v. Club Ecuestre El Comandante, supra* at 701; *Ferrara v. Ibach*, D.S.C.1968, 285 F.Supp. 1017, 1020; *Seegers v. Strzempek*, E.D. Mich.1957, 149 F.Supp. 35, 37. Intention is, of course, important. But in those cases the physical presence requirement was clearly met. Thus, the issue was only whether a person had intended to make a place in which he or she had lived a domicile. The courts therefore were not, contrary to plaintiff's argument, saying that the intention requirement was more important than the physical presence requirement or that physical presence was unnecessary but rather that the party's *actual* intent was more important than the presence alone of certain contacts with a locale from which the court might infer intent.

been allowed to change their domicile but have retained the domicile at time of incarceration. Recent cases have eroded that *per se* rule to allow a prisoner to establish the intent to be domiciled in the state of incarceration. *Stifel v. Hopkins*, 6 Cir. 1973, 477 F.2d 1116; *Jones v. Hadican*, 8 Cir. 1977, 552 F.2d 249, *cert. denied*, 431 U.S. 941, 97 S.Ct. 2658, 58 L.Ed.2d 260 (1977); *Housand v. Heiman*, 2 Cir. 1979, 594 F.2d 923, 925–26 n. 5. These cases reflect an awareness that the *per se* rule was designed to serve a purpose—to prevent a prisoner from losing his previous domicile due to his compelled relocation—that was irrelevant in situations where the prisoner desired such a change. Had Honneus sought to make his domicile Pennsylvania, where he was imprisoned, and had he established the requisite intent, these cases suggest that he might have become a Pennsylvania domiciliary and accordingly been able to invoke our diversity jurisdiction in this instance. But these cases are not dispositive where the prisoner seeks to change his domicile to a state other than where he is, and we know of no case which has held, or even suggested, that a prisoner might change his domicile to a state in which he was not present.

Nor did Honneus' domicile change by virtue of his ex-wife's move. The common law formerly assigned a married woman the domicile of her husband. That rule is an anachronism, resting as it did on the subordination of wife to husband the law once imposed. In any event, we know of no case that holds that a wife's change of domicile affects the domicile of her husband.

Accordingly, Honneus was, at the time he brought this suit, a Massachusetts domiciliary. That being so, diversity of citizenship was lacking and the court did not have jurisdiction over the subject matter of the action. Although the evidence produced following Donovan's motion for relief from judgment leads us to conclude that the court's implicit decision that it had subject matter jurisdiction was erroneous, that does not dispose of this matter. We must also address the further question of whether some basis exists for the court to grant relief from this judgment.

Although Donovan does not identify in his motion the clause of Federal Rule of Civil Procedure 60(b) upon which he relies, his affidavit alleges that Honneus' claim that he was a citizen of Florida is a fraud upon this court. Indeed Rule 60(b)(3) provides that fraud may be a basis for setting aside a judgment and a savings clause of Rule 60(b) further states that the rule "does not limit the power of a court . . . to set aside a judgment for fraud upon the court." Here neither Rule 60(b)(3) nor the court's inherent power to vacate a judgment procured by fraud authorize us to grant defendant relief for the simple reason that we find no fraudulent conduct on plaintiff's part. For the reasons stated in the first part of this opinion, Honneus' statement that he was a citizen of Florida was untrue. But we do not believe that Honneus knew that his statement was false or that he intended to deceive the parties or the court. Further, we note that the defendants were not misled. The three defendants who answered plaintiff's complaint and amended complaint raised the defense of a lack of subject matter jurisdiction on two occasions each. Least deceived was Donovan. As Honneus' brother-in-law at the time suit was brought, and as a lawyer, he presumably was in the best position of all parties to know both the facts and the law regarding Honneus' claim that he was a Florida domiciliary. Moreover, fraud on the court usually involves "the most egregious conduct involving a corruption of the judicial process itself", *Lockwood v. Bowles*, D.D.C.1969, 46 F.R.D. 625, 632. Plaintiff's conduct here clearly does not rise to that level.

Defendant Donovan's motion and supporting affidavit do not explicitly seek relief on the grounds that the default decision was void, but do allege facts that, if true, would suggest an absence of subject matter jurisdiction. Courts do, however, have a broad duty to raise and determine whether subject matter jurisdiction exists, and since defendant's papers, under a gen-

erous reading, implicitly raise a claim that the judgment is void, we consider whether the court should grant defendant relief from judgment under Rule 60(b)(4) on the grounds that the judgment is void for lack of subject matter jurisdiction.

Although we recognize *Eisler v. Stritzler*, 1 Cir. 1976, 535 F.2d 148, as controlling law, we do not believe it governs these facts. In *Eisler* a defendant who had initially acknowledged that his citizenship was diverse from plaintiff's sought to challenge the court's subject matter jurisdiction after the court had defaulted him for failing to respond to discovery. The district court refused to entertain the challenge and entered final judgment for plaintiff. Defendant appealed. On appeal the First Circuit noted that the "well established rule in the federal courts is that subject matter jurisdiction may be litigated at any time before the case is finally decided", *Eisler, supra* at 151, and remanded the case for a hearing on whether the court had subject matter jurisdiction. Had Donovan objected to the lack of subject matter jurisdiction before final judgment was entered, as did the defendant in *Eisler*, we would have recognized *Eisler* as the governing authority and would have examined the issue. Similarly, had Donovan appealed the default judgment either he or the appellate court could have raised the issue. But we do not believe *Eisler* governs when a party first raises the lack of subject matter jurisdiction after final judgment has been entered and after time for taking an appeal has expired.

■ The district court's authority to consider the lack of subject matter jurisdiction is then confined by the more narrow criteria Rule 60(b) imposes of which the voidness standard of Rule 60(b)(4) is here pertinent. Under that provision, lack of subject matter jurisdiction is sometimes, but not always, a proper ground of attack. We conclude that under the circumstances present here the court cannot set aside its final judgment as void for two reasons.

First, the court's implicit determination that subject matter jurisdiction existed may have been erroneous, but that in itself would not be sufficient to make the judgment void. The Court of Appeals for the First Circuit explained the difference in *Lubben v. Selective Service System Local Bd. No. 27*, 1 Cir. 1972, 453 F.2d 645, 649.

A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void. (footnotes deleted.)

Honneus' complaint alleged that he was a citizen of Florida and defendants, including Donovan, of Massachusetts. On its face, diversity, and hence subject matter jurisdiction, existed. Other defendants raised lack of subject matter jurisdiction as defenses in their answers and addressed interrogatories to the plaintiff on the subject. The issue was never decided, however, because they entered into stipulations of dismissal with the plaintiff. The court was, accordingly, aware of the issue. In entering a default judgment against Donovan, the court accepted the facts regarding jurisdiction as alleged in Honneus' complaint to the effect that subject matter jurisdiction existed. See *Brown v. McCormick*, 10 Cir. 1979, 608 F.2d 410, 413–14. The information produced at the hearing on Donovan's present motion which is outlined above indicates that we erred in our exercise of our power to determine subject matter jurisdiction. But that does not constitute a usurpation of power.

■ We also deny Donovan the relief he seeks on a second ground. It is well established that a court's determination that it has subject matter jurisdiction, even if the

issue is not actually litigated, is *res judicata* if a party had the opportunity to contest that issue but failed to do so. *Jackson v. Irving Trust Co.*, 1941, 311 U.S. 494, 503, 61 S.Ct. 326, 330, 85 L.Ed. 297; *Chicot County Drainage Dist. v. Baxter State Bank*, 1940, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329; 7 J. Moore, Federal Practice ¶ 60.25[2], at 308 (2d ed. 1979). Here Donovan, after being served, entered an appearance as his own counsel. He received copies of the papers filed, and the orders issued, in this case. He saw the issues unfold. He had ample opportunity from the date the complaint was filed to the time final judgment was issued to litigate the question before this court which he now seeks to raise. Accordingly, the existence of subject matter jurisdiction in this case is *res judicata* and is not susceptible to collateral attack.

On both grounds it is ordered that defendant's motion for relief from judgment be denied.