Peter G. COOK, Thea Duvall, and Aleksandar Milosavljevic–Cook, Individually and on behalf of Maya's Meals, Plaintiffs,

v.

Maya TOIDZE, Alexandre Ivankine, Tim Toidze and Alezandre Avroutine, Defendants.

Civil Action No. 3:07–CV–0712 JCH.

United States District Court, D. Connecticut.

June 13, 2013.

Richard P. Colbert, Day Pitney LLP, Stamford, CT, for Plaintiffs.

## RULING RE: MOTION FOR RECONSIDERATION AS TO MOTION FOR JUDGMENT PURSUANT TO RULES 55(c) and 60(b) (Doc. No. 164)

JANET C. HALL, District Judge.

## I. INTRODUCTION

Plaintiffs Peter Cook ("Cook"), Thea Duell ("Duell"), and Aleksandar Milosavlievic–Cook ("Milosavlievic–Cook") brought suit, both individually and derivatively on behalf of Maya's Meals, LLC, against defendants Maya Toidze, Alexandre Ivankine ("Ivankine"), Tim Toidze, and Alexandre Avroutine ("Avroutine"). The parties reached a settlement agreement, which ultimately fell apart, after which the plaintiffs filed an Amended Complaint—and later Substituted Complaint—against the defendants. *See* (Doc. Nos. 95, 108). After the filing of the Amended Complaint, only Avroutine appeared; and the plaintiffs then moved for default against the

other three defendants.[1] *See* (Doc. No. 120). Default judgment was entered against Maya Toidze, Ivankine, and Tim Toidze (collectively, "defaulted defendants") on November 21, 2011. *See* (Doc. No. 159).

Almost a year later, the defaulted defendants filed a Motion for Reconsideration as to the Order on the plaintiffs' Motion for Judgment. *See* (Doc. No. 164). The defaulted defendants argued that, pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure, the default judgment was void because the plaintiffs failed to serve them in accordance with the Hague Convention and because Maya's Meals was not registered to do business in Connecticut. *Sua sponte*, the court also raised whether the default judgment was void for lack of subject matter jurisdiction. *See* (Doc. No. 197).

## II. BACKGROUND

Maya's Meals is a limited liability company with Cook, Duell, Milosavlievic–Cook, Maya Toidze, Ivankine, Tim Toidze, and Avroutine as members.[2] Subst. Compl. ¶¶ 2–9. The Substituted Complaint alleges that Maya Toidze entered into an Assignment and Agreement to transfer to Maya's Meals certain intellectual property rights, including a system for producing dough; food technology related to crepes, frozen soup, and entrees; and recipes to create various food products. Subts. Compl. ¶¶ 17–18. On or about February 16, 2006, Maya's Meals entered into a joint venture with Advance Food Company to form Maya's & Co. Foods, LLC. Subst. Compl. ¶ 19. As part of this venture, Maya's Meals licensed the joint venture to use its food technology to produce non-organic hand-held meals and snacks. Subst. Compl. ¶ 22. The joint venture also entered into various consulting and manufacturing agreements to prepare the food products. Subst. Compl. ¶¶ 25–27. However, Maya Toidze did not transfer the intellectual property rights and the joint venture declined to renew one of their consulting agreements because of it. Subst. Compl. ¶¶ 28–29. Maya Toidze finally transferred four of the approximately 27 recipes to the joint venture in October 2006. Subst. Compl. ¶ 30. Although Cook, as Chairman of the Board of Maya's Meals, and Greg Allen, Vice President of the joint venture, requested that Maya Toidze transfer the remaining recipes, Maya Toidze failed to do so. Subst. Compl. ¶¶ 31–34.

Maya Toidze, Ivankine, and Avroutine demanded that the joint venture pay for their travel to attend a meeting on behalf of the joint venture around October 2006. Subst. Compl. ¶¶ 39–46. When the joint venture failed to authorize the travel, they attended anyway and Maya Toidze resigned as Vice President of the Joint Venture, seemingly in protest. Subst. Compl. ¶¶ 41–42. In November 2006, the members of Maya's Meals issued a capital contribution call, but Maya Toidze and Ivankine failed to pay their pro rata share. Subst. Compl. ¶ 50. Further, in March 2007, Maya Toidze, in concert with Cook's ex-wife, transferred 6.5% of Cook's membership interest to his ex-wife. Subst. Compl. ¶¶ 55–59. In that same month, the defendants claimed to pass two resolutions to (1) remove Cook as manager of Maya's Meals and appoint Avroutine as manager and (2) amend the Operating Agreement, despite the fact that the resolutions were

---

1. The plaintiffs settled with Avroutine, and the claims against him were dismissed. Joint Stip. of Dismissal (Doc. No. 142).

2. Other members of Maya's Meals, who are not parties to this action, are Krasnov Arcady, Howard Bernstein, Ljiljana Milosavljevic, and the Mirjana Milosavljevic–Cook Trust. Subst. Compl. ¶¶ 10–13.

not affirmed by the appropriate percentage of members. Subst. Compl. ¶¶ 63–65.

After the parties entered into a Stipulated Agreement to resolve the above matters, the defendants failed to finally negotiate and complete the agreement and failed to respond to critical matters facing the joint venture. Subst. Compl. ¶¶ 78–83. Subsequently, the joint venture was dissolved in December 2009 after having sold its assets to satisfy its creditors. Subst. Compl. ¶ 85.

The plaintiffs filed an Amended Complaint on September 8, 2010. *See* (Doc. No. 95). The plaintiffs moved to enter a default judgment against the defendants on September 27, 2010, *see* (Doc. No. 96), to which Maya Toidze attempted to respond on behalf of herself, Tim Toidze, and Ivankine. *See* (Doc. Nos. 101–104). The plaintiffs filed a Substituted Complaint on November 8, 2010. *See* (Doc. No. 108). The court denied the plaintiffs' Motion for Default because the Substituted Complaint included a new claim for relief, which meant the plaintiffs needed to re-serve the Substituted Complaint on the defendants in accordance with Rule 5(a)(2) of the Federal Rules of Civil Procedure. *See* (Doc. No. 109). The plaintiffs moved again for a default judgment as to Maya Toidze, Tim Toidze, and Ivankine on November 29, 2010, *see* (Doc. No. 114), after the plaintiffs filed proof of service with the court, *see* (Doc. No. 110). However, the court directed the plaintiffs to provide proof of service in accordance with the Hague Convention. *See* (Doc. No. 115). The plaintiffs filed proof of service by registered mail, *see* (Doc. No. 117), after which the court entered default judgment on November 21, 2011. *See* (Doc. No. 159).

## III. STANDARD OF REVIEW

Rule 60(b) identifies several reasons for which a party may be relieved from judgment:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). The Rule further provides that the motion be made "within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken." *Id.*

## IV. DISCUSSION

The default defendants filed their Motion for Reconsideration based on their contention that the default judgment was void because (1) the plaintiffs failed to serve the Substituted Complaint on them in accordance with the Hague Convention as required by Rule 5(a)(2); and (2) the court lacked subject matter jurisdiction because Maya's Meals was not registered to do business in Connecticut.[3]

---

**3.** In later filings, the defaulted defendants also argued that Maya's Meals could not bring a derivative action in Connecticut because the Delaware Limited Liability Company Act established the Delaware Court of Chancery as the default forum in the event the members did not provide another choice of forum. *See* Defs.' Reply at 3. They also argued that the default judgment failed to meet the requirements of Rule 65(d)(1)(C), namely that injunctive relief "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed.R.Civ.P. 65(d)(1)(C); *see* also Defs.' Suppl. Mem. (Doc. No. 202) at 12–14.

The court *sua sponte* raised whether the default judgment was void for lack of subject matter jurisdiction because the parties were not completely diverse. The Substituted Complaint does not include a basis for jurisdiction. However, the original Complaint (Doc. No. 1) states that the basis for jurisdiction is diversity of citizenship pursuant to section 1332 of title 28 of the United States Code. *See* Notice of Removal (Doc. No. 1) ("This Court possesses original jurisdiction of this matter pursuant to 28 U.S.C. § 1332). The plaintiffs brought this suit individually and derivatively on behalf of Maya's Meals, LLC. The individual plaintiffs are all residents of Connecticut. *See* Subst. Compl. ¶¶ 3–5. The defendants are residents of Canada. *See* Subst. Compl. ¶¶ 6–8. All are alleged to be members of Maya's Meals, LLC.

■■■ A limited liability company has the citizenship of its membership. *Handelsman v. Bedford Village Associates Ltd. Partnership*, 213 F.3d 48, 51 (2d Cir.2000) (stating that, while a plaintiff was a citizen of New York, as a representative of an LLP, he was deemed to have the citizenship of all the limited partners he represents). Therefore, Maya's Meals has the citizenship of each of its members: here, Connecticut and Canada. As such, the parties are not completely diverse.[4]

The plaintiffs argue that this lack of diversity does not void the default judgment for a number of reasons: (1) Maya's Meals was a nominal party that the court need not consider for diversity purposes; (2) even if diversity were lacking, it does not render the final judgment void under Rule 60(b)(4); (3) the court can reopen the judgment to correct an issue with diversity jurisdiction to uphold the final judgment; and (4) resolving diversity jurisdiction would not be futile because the court also had personal jurisdiction over the defendants when it entered the final judgment. *See* Pl. Suppl. Mem. (Doc. No. 201) at 1. The court will address each of these arguments.

### A. *Maya's Meals is not a nominal party*

■■■ First, if the action at hand is a derivative suit, the limited liability company is not a nominal party. *See Lenz v. Assoc. Inns. and Restaurants Co.*, 833 F.Supp. 362, 378 (S.D.N.Y.1993) (stating that, "in a derivative action brought by a limited partner, the limited partnership is an indispensable party"). However, it is not dispositive that the plaintiffs state that they are bringing claims derivatively. *Id.* at 379 (stating that, "it should be noted that in determining whether a claim is derivative or direct, the court must look to the nature of the wrongs alleged in the body of plaintiff's complaint, and is not limited by plaintiff's characterization or stated intention"). In determining whether a claim is derivative or direct, the court must consider (1) who suffered the alleged harm (the corporate entity or the individu-

---

4. "In a derivative suit, the entity on whose behalf suit is brought may be re-aligned as a defendant for diversity purposes when it is 'hostile' to the action." *DirecTV Latin America, LLC v. Park 610, LLC*, 2009 WL 692202, at *6 (S.D.N.Y. Mar. 18, 2009). However, regardless of where Maya's Meals is aligned in this suit, there is no diversity. First, if aligned as a plaintiff, the plaintiffs are citizens of Connecticut and Canada while the defendants are citizens of Canada. "Diversity jurisdiction does not exist ... where on one side there are citizens [of a State] and aliens and on the opposite side there are only aliens." *Aguinaga v. UBS AG & UBS Bahamas Ltd.*, 2010 WL 5093433, at *4 (S.D.N.Y. Dec. 14, 2010) (quoting *CP Solutions PTE, Ltd. v. General Electric Co.*, 553 F.3d 156, 158 (2d Cir.2009)). Second, if aligned as a defendant, the plaintiffs are citizens of Connecticut while the defendants are citizens of Connecticut and Canada, thereby destroying complete diversity.

als) and (2) who would receive the benefit of any recovery or other remedy. *Tooley v. Donaldson, Lukfin & Jenrette,* 845 A.2d 1031, 1033 (Del.2004). Under Delaware law, generally speaking, the "diminution of the value of a business entity is classically derivative in nature." *Ernst & Young Ltd. v. Quinn,* 2009 WL 3571573, at *9 (D.Conn. Oct. 26, 2009) (stating that claims are derivative because the individual parties sought recovery based upon their proportional investment in the corporate entity); *see also Lenz,* 833 F.Supp. at 380 (stating under similar New York law that limited partners who seek redress for injuries inflicted directly upon the limited partnership and felt by the individuals only to the extent of their proportionate interest in the enterprise bring derivative claims).

▮ The plaintiffs are bringing derivative claims.[5] They allege that Maya Toidze neglected to transfer intellectual property rights to Maya's Meals, which forced the joint venture to fail to renew a consulting agreement. Subst. Compl. ¶¶ 28–29. Due to the defaulted defendants' unauthorized travel to participate in meetings with consulting parties, the plaintiffs allege that they "damage[ed] the relationship between Lone Star and the Joint Venture of which Maya's Meals was a fifty (50) percent member." Subst. Compl. ¶ 49. By failing to pay their pro rata share of the capital contribution call, Maya Toidze and Ivankine "caused a shortfall in Maya's Meal's working capital to the detriment of Maya's Meals." Subts. Compl. ¶ 51. The plaintiffs also allege that the defendants "improperly interfered with the governance of Maya's Meals, thereby continuing a campaign to endanger and destroy the value and security of all member-

ship interests in Maya's Meals." Subst. Compl. ¶ 61.

All of these allegations claim that the defendants' actions harmed Maya's Meals, or that, by harming Maya's Meals, the plaintiffs also suffered harm because their interest in Maya's Meals was diminished. Such allegations are derivative in nature. Therefore, Maya's Meals is not a nominal party.

### B. The default judgment is void for lack of subject matter jurisdiction

▮ Next, plaintiffs argue that, even though the court lacked subject matter jurisdiction over the case because the parties are not completely diverse, that does not render the default judgment void. Lack of subject matter jurisdiction is "sometimes, but not always, a proper ground of attack" under Rule 60(b)(4). *See Honneus v. Donovan,* 93 F.R.D. 433 (D.Mass.1982). Case law distinguishes between "[a] void judgment [which] is one which, from its inception, was a complete nullity and without legal effect" and an "error in the exercise of jurisdiction." *Id.* (internal citations omitted); *see also Steiner v. Atochem,* 70 Fed.Appx. 599 (2d Cir. 2003). Where the district court had a "'reasonable basis' for exercising jurisdiction, although the court may have erred in fact as to the existence of that jurisdiction,'" the court shall not grant a motion pursuant to Rule 60(b). *Steiner,* 70 Fed. Appx. at 600.

The plaintiffs cite to *Estate of Malone, Jr., et al. v. GE Credit Corp., et al.,* 1992 WL 610515, 1992 U.S. Dist. Lexis 22517 (S.D.Miss.1992) to support their argument that the default judgment is not void. Pl. Suppl. Mem. at 7. In *Estate of Malone,* the defendant removed the action from state

---

5. That is not to say the plaintiffs are not also bringing individual claims. For example, Cook has alleged that the defendants tried to transfer his interest in Maya's Meals to his ex-wife. Such claims allege direct injury to his interest. Subst. Compl. ¶¶ 57–59.

court on the basis of fraudulent joinder. *Id.* at *3–4, 1992 U.S. Dist. Lexis at *9. The plaintiff filed a motion to remand alleging no diversity of citizenship (in essence, that the joinder was proper), which was pending at the time the court entered a default judgment. *Id.* According to the court, it impliedly overruled the pending motion when it entered the default judgment. *Id.* Therefore, there was no usurpation of power; if anything, the court incorrectly determined that there was diversity of citizenship based on fraudulent joinder, making the judgment erroneous, but not void. *Id.* at *4–5, 1992 U.S. Dist. Lexis at *12.

■ Unlike in *Estate of Malone,* the plaintiffs did not move to remand the action for lack of diversity and, therefore, the issue was not before the court. It follows that, unlike in *Estate of Malone,* there was no implicit determination by the court finding the existence of diversity; *see also Honneus,* 93 F.R.D. at 437 (stating that the court was aware of the issue of whether there was subject matter jurisdiction at the time it entered default judgment because some defendants raised lack of subject matter as a defense in their answers). In fact, there was no basis to find diversity in the current case. *See Baella–Silva v. Hulsey,* 454 F.3d 5, 9 (1st Cir.2006) (stating that, "if the record supports an 'arguable basis' for concluding that subject-matter jurisdiction existed, a final judgment cannot be collaterally attached as void"). Unlike *Honneus,* in which it appeared from the face of the complaint that the parties were completely diverse—the Complaint alleged that the plaintiff was a citizen of Florida and the defendants were citizens of Massachusetts—even though they were not because one of the defendants was actually a citizen of Florida, *Honneus,* 93 F.R.D. at 437, it is clear from the Substituted Complaint that diversity is not complete. *See* Subst. Compl. ¶¶ 3–8 (listing the residences of the members of Maya's Meals as Connecticut and Canada and listing the residences of the defendants as Canada). Further, although the plaintiffs try to argue that the court may have implicitly determined that Maya's Meals was a nominal party, *see* Pl. Suppl. Mem. at 9, the court never made such a determination, either directly or indirectly (or implicitly). Because the court never made an erroneous determination regarding subject matter jurisdiction, the default judgment is, instead, void for lack of subject matter jurisdiction under Rule 60(b)(4).

## C. *The court cannot reopen the judgment to correct diversity*

The plaintiffs argue that, even if the parties are not completely diverse, the court has the authority to dismiss a dispensable, non-diverse party pursuant to Rule 21 of the Federal Rules of Civil Procedure. *See* Pl. Suppl. Mem. at 9. According to plaintiffs, Maya's Meals is a dispensable party because the compensatory damages and declaratory and injunctive relief awarded in the default judgment addressed wrongs against the individual parties, not Maya's Meals. *Id.* at 3.

Rule 21 states that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed.R.Civ.P. 21. "Courts have employed Rule 21 to preserve diversity jurisdiction by dropping a nondiverse party not indispensable to the action under Federal Rule of Civil Procedure 19." *Manyk v. Western Union Co. Financial Co.,* 2010 WL 3062891, at *1 (S.D.N.Y. Aug. 4, 2010). Courts may drop a dispensable part pursuant to Rule 21 even after judgment has been rendered. *Enza, Inc. v. We The People, Inc.,* 838 F.Supp. 975, 977 (E.D.Pa. 1993).

Rule 19(b) sets the standard for determining whether a party is indispensable. *See Manyk,* 2010 WL 3062891, at *1–2. The court should consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

 The court concludes that Maya's Meals is an indispensable party to the action. First, "[a]pplying these factors, courts appear unanimous in concluding that the party on whose behalf a derivative claim is brought is indispensable." *Roh v. Devack,* 2010 WL 5069874, at *3 (D.Conn. Dec. 3, 2010) (quoting *Bartfield v. Murphy,* 578 F.Supp.2d 638, 650 (S.D.N.Y. 2008)). Second, although the plaintiffs argue that the default judgment does not address the harms for which the plaintiffs seek relief through their derivative claims, Pl. Suppl. Mem. at 2, the court disagrees. Much of the relief set forth in the default judgment pertains to Maya's Meals itself, rather than the individual plaintiffs. For example, the following injunctive relief is set forth in the plaintiffs' Motion for Entry of Default, which was incorporated into the Default Judgment:[6] removal of Maya Toidze and Tim Toidze from the Board of Managers of Maya's Meals, removal of Maya Toidze as President, confirmation of

Peter Cook as a member of the Board of Managers of Maya's Meals, maintenance of the status quo of the membership interests and Operating Agreement of Maya's Meals, enjoining of default defendants from acting on behalf of or causing harm to Maya's Meals, enjoining of default defendants from further requesting removal of Maya's Meal's intellectual property or company files, and requirement that Maya Toidze disclose and transfer the remainder of technology to Peter Cook in his capacity as Chairman of the Board of Maya's Meals. *See* Pl. Mot. Entry of Judge. (Doc. No. 145). Maintaining the default judgment without Maya's Meals as a member would, therefore, not provide an adequate remedy. *See Doughan v. Tutor Time Child Care Sys., Inc.,* 1996 WL 502288, at *3 (E.D.Pa. Aug. 27, 1996) (stating that plaintiffs are without an adequate remedy if the case were to proceed without defendant Tutor Time Learning because the court may not be able to give plaintiff access to all the relevant books, accounts, funds, and deposits as requested under the claim for accounting and examination of books); *see also Roh,* 2010 WL 5069874, at *4 (stating that "[a] judgment rendered in . . . [the corporate entity's] absence would not be adequate in that it is not clear that this [c]ourt could order the dissolution of or otherwise exercise authority over an independent legal entity which had not been party to the underlying action"). Lastly, plaintiffs can pursue their claims in state court where Maya's Meals can be a party, *see Roh,* 2010 WL 5069874, at *5, therefore, "plaintiffs would have an adequate remedy if the action were dismissed." Fed.R.Civ.P. 19(b)(4).

---

**6.** The default defendants argue that the Default Judgment is invalid because it incorporated by reference the injunctive relief requested in the plaintiffs' Motion for Entry of Default, in violation of Rule 65(d) of the Federal Rules of Civil Procedure. Defs.' Suppl. Mem. at 12. The court need not consider this argument in light of its conclusion that Maya's Meals is an indispensable party.

D. *The court lacked personal jurisdiction over Tim Toidze and Ivankine*

The plaintiffs argue that, were the court to dismiss Maya's Meals to maintain the default judgment, such action would not be futile because, although the default defendants argue otherwise, service of process was proper and the court had personal jurisdiction over the default defendants. Pl. Suppl. Mem. at 10–15. The court need not address this assertion because it has already determined that it cannot dismiss Maya's Meals from this action under Rule 21 and that, therefore, the default judgment is void under Rule 60(b)(4) for lack of subject matter jurisdiction. However, it is worth noting that the default judgment could also be voided as to Tim Toidze and Ivankine for lack of personal jurisdiction.

 On a Motion to Vacate a Default Judgment based on improper service of process, if a defendant had actual notice of the proceeding, the defendant bears the burden of proof to establish that service was not properly effectuated. *See Burda Media, Inc. v. Viertel,* 417 F.3d 292, 299 (2d Cir.2005). The plaintiffs filed their first Substituted Complaint on September 8, 2010, and a Motion for Default on September 27, 2010. Maya Toidze attempted to respond to the Motion for Default on her own behalf as well as for Tim Toidze and Alexandre Ivanke around October 7, 2010. *See* Ivankine Suppl. Decl. (Doc. No. 179) at ¶ 11. Therefore, there is no question that Maya Toidze bears the "burden of proving an absence of personal jurisdiction," *Burda,* 417 F.3d at 299 (citing *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 401 (7th Cir.1986)), because she had actual notice of the reinstituted action against her, as she attempted to respond to the Motion for Default in that action. However, there is no evidence that Ivankine and Tim Toidze had knowledge of the reinstituted action just because Maya Toidze responded on their behalf. Alexan-

dre Ivankine stated in his Supplemental Declaration that he "was gravely ill at that period of time [when Maya Toidze attempted to reply to the Motion for Default], with a life-threatening heart condition, involving also a severe neurological complication. My spouse did not advise me of her attempted filing and I did not authorize it, particularly in light of my medical condition." Ivankine Suppl. Decl. at ¶ 7. Therefore, as to Ivankine and Tim Toidze, the burden remains on the plaintiffs to establish that service was, in fact, proper.

All three default defendants attempt to argue that the plaintiffs needed to serve process in Russia in accordance with the Hague Convention because they moved— or in the case of Tim Toidze, traveled frequently—to Russia. Def. Mot. Reconsid. at 6. However, the defendants never notified the court of any change of address to Russia. In fact, in the defendants' attempted Reply to the Motion for Default, Maya Toidze listed her address in Canada. *See* Ivankine Suppl. Decl. at ¶ 11 ("Reverting to the erroneous attempting [sic] filings by my spouse on or about October 7, 2010, as I learnt that she indicated the Canadian addresses related to co-defendant Alexandre Avroutine, hoping for a courtesy of forwarding correspondence to her to Moscow. However, Mr. Avroutine moved to another address in Canada, and ultimately his courtesy to forward correspondence to Moscow did not materialized [sic]. Mr. Avroutine, who was rather a good acquaintance of our family, was not our agent for service of process.").

 Regardless, service in Canada also has to comply with the Hague Convention; however, service by regular mail is proper under the Hague Convention where the party served is a resident of Canada. *See Heredia v. Transport S.A.S., Inc.,* 101 F.Supp.2d 158, 161 (S.D.N.Y.2000) ("Cana-

da does not object to service by postal channels.... Thus, service by registered mail in Quebec is adequate service under the [Hague] Convention [on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters].". The plaintiffs filed a certificate of service stating that all three defendants were served by registered mail.[7] *See* (Doc. No. 117). However, the plaintiffs admitted that four out of the six mailings were returned undelivered. *See* Pl.'s Suppl.l Mot. at 6. The two supposedly signed for on behalf of Maya and Tim Toidze was signed by another tenant by mistake. Defs. Obj. to Pl. Leave to File Suppl. (Doc. No. 188) at 3.

The question becomes whether actual receipt is required for service to be proper under the Hague Convention. In *Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir.2005), the Second Circuit did not reach the question of whether actual receipt of the summons is required under the Hague Convention. *Id.* at 302 (recognizing that the district court below concluded that actual receipt of the summons is not required under the Hague Convention); *see also Burda Media, Inc. v. Blumenberg*, 2004 WL 1110419, at *8 (S.D.N.Y. May 18, 2004); *Lidas, Inc. v. United States*, 238 F.3d 1076, 1084 (9th Cir.2001) (stating that the Hague Convention and procedural due process do not require "actual notice"). Other courts have suggested that actual notice is required. *See Complexions, Inc. v. Zytek, Inc.*, 2011 U.S. Dist. LEXIS 88047, at * (N.D.N.Y. Aug. 9, 2011) (stating that, because the third-party defendant received actual notice of the third-party action and has not established prejudice sufficient, dismissal was inappropriate); *Trump Taj Mahal Assoc. v. Hotel Ser-*

*vices, Inc.*, 183 F.R.D. 173, 181 (D.N.J. 1998) (stating that, because "Roboserve did not receive actual notice of this action through the mailing to its Canadian business address," the court "cannot find that the mailing to Canada accomplished valid service"); *Wilson v. Austin*, 2012 WL 3764512, at *5 (E.D.N.Y. June 25, 2012) (stating that service was sufficient under the Hague Convention, Rule 4, and due process when the defendants were served by registered mail to their last known addresses in the United Kingdom, the plaintiff attempted to comply with the Hague Convention in good faith, and the defendant does not dispute having received the complaint).

In this case, Maya Toidze had actual notice of the reinstituted proceeding. *See supra*, p. 394. Therefore, regardless of whether she actually received the Substituted Complaint, she has failed to meet her burden of proving that service was not properly effectuated. *Wilson*, 2012 WL 3764512, at *5. However, there is no evidence that Tim Toidze and Ivankine received the Substituted Complaint or that they had actual notice. As the burden remains on the plaintiffs to prove that service was effective, *see Burda*, 417 F.3d at 299, and there is no evidence as such, the court concludes that service was improper as to Tim Toidze and Ivankine. Therefore, under Rule 60(b)(4), the court finds another basis—lack of personal jurisdiction—for voiding the default judgment against Tim Toidze and Ivankine.

## V. CONCLUSION

Because the court finds that it does not have subject matter jurisdiction, the defendants' Motion for Reconsideration (Doc.

---

7. The plaintiffs first sent service by overnight and/or electronic mail and filed a certificate of service. *See* (Doc. No. 110). The court directed the plaintiffs to file service by registered mail to comply with the Hague Convention, *see* (Doc. No. 115), to which the plaintiffs did and filed another certificate of service. *See* (Doc. No. 117).

No. 164) is **GRANTED**. The case is now pending and sua *sponte,* the court recognizes that it does not have jurisdiction, the matter was improvidently removed, and it is remanded to the Connecticut Superior Court. *See Mignogna v. Sair Aviation, Inc.,* 937 F.2d 37, 40 (2d Cir.1991) (stating that, "if the federal court never could have exercised original jurisdiction over the case, remand is required even after the entry of final judgment"); *see also American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 18, 71 S.Ct. 534, 95 L.Ed. 702 (1951) ("To permit a federal trial court to enter judgment in a case removed without right from a state court where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties work a wrongful extension of federal jurisdiction . . .").

**SO ORDERED.**