**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4715
_____

BRAVERMAN KASKEY, P.C.

v.

MAYA TOIDZE,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-09-cv-03470)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 2, 2014

Before: AMBRO, CHAGARES, and VANASKIE, Circuit Judges

(Filed: January 13, 2015)
_____

OPINION*
_____

VANASKIE, Circuit Judge

Appellant Maya Toidze appeals the District Court's order denying her motion to

vacate a default judgment. Toidze, a Russian national who previously resided in Canada,

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

claims that Appellee Braverman Kaskey, P.C., ("BK") failed to properly serve process on her and the District Court erred by allowing service by publication in the area of her last known address. Moreover, she argues that the District Court lacked personal jurisdiction over her. We conclude that the District Court correctly authorized BK to make service via publication and properly exercised personal jurisdiction. Accordingly, we will affirm.

I.

The genesis of this matter was a battle for control of "Maya's Meals," a company owned by Toidze, Peter Cooke, and other investors that produced a dough product developed by Toidze. In April 2007, Cooke sued Toidze (among others) in the Superior Court at Stamford, Connecticut (the "Connecticut Action"). That suit was removed to the District Court in Connecticut on May 4, 2007. Later that month, Toidze met with representatives of BK, a law firm and professional corporation incorporated in Pennsylvania and located in Philadelphia. During that meeting, Toidze signed a retainer agreement authorizing BK to represent her in the Connecticut Action. In return, Toidze agreed to pay one percent of all equity interests in Maya's Meals for each $20,000 of billable time incurred by BK. The agreement further required that Toidze reimburse BK for all out-of-pocket litigation expenses advanced within 30 days of billing.

Between May 2007 and July 2008, BK represented Toidze in the Connecticut Action, incurring $350,324.50 in billable time and $26,951.45 in out-of-pocket costs, for a total of $377,275.95. During this time, BK negotiated two possible settlement agreements, one in June 2007 and a second in late spring 2008; however, Toidze refused

to sign off on either. After Toidze rejected the second proposed settlement, BK perceived an irreconcilable conflict and moved to withdraw as counsel. On July 21, 2008, BK's motion to withdraw was granted.

In July 2009, the instant case commenced when BK filed suit against Toidze in the Eastern District of Pennsylvania for non-payment of legal fees and costs. The complaint alleged that Toidze was a citizen of Canada and that she resided in Markham, Ontario. However, unbeknownst to BK, Toidze had returned to Russia. Between August and November 2009, BK attempted to serve original process of the summons and complaint by hand delivery at her Canadian address, but those efforts were unsuccessful. The individual living at the residence claimed Toidze had moved. BK then tried to serve process at her son's address in Richmond Hill, Ontario, a town adjacent to Markham. Her son confirmed that Toidze had moved approximately three months earlier, but did not disclose her new address. Nonetheless, as late as October 8, 2010, Toidze, then proceeding *pro se* in the Connecticut Action, filed a "Reply to Plaintiff's Motion for Entry of Default," indicating that she lived at her son's address in Richmond Hill. *Cook v. Toidze,* 950 F. Supp. 2d 386, 394 (D. Conn. 2013). That filing also specified two email addresses for Toidze: moriland@rogers.com and mayatoidze@rogers.com. *Id.*

BK next sought to serve process on Toidze by registered mail, return receipt requested, via the U.S. Postal Service and the Canada Post Corporation, but that method was unsuccessful as well. After contacting Canadian Post authorities, BK learned that Toidze had moved and her mail forwarding account had expired. Due to the expiration of

3

the forwarding account, the Canadian Post authorities could not disclose any information concerning her new address because of security protocols. BK then sought to locate Toidze by utilizing several internet phone and address record databases based in both the United States and Canada. Additionally, BK endeavored to contact Toidze using a cell phone number and the email addresses she provided during the course of the Connecticut Action. All of these efforts failed to uncover Toidze's new address or location.

On December 29, 2009, BK filed a motion pursuant to Fed. R. Civ. P. 4(e)(1) for alternative service by publication upon Toidze. The District Court granted that motion on March 4, 2010, finding that BK "has made a good faith and practical effort to locate and serve Defendant Maya Toidze in the regular course." (App. at 1.) In March 2010, the appropriate notices were printed on two different days in the Markham Economist & Sun, a newspaper of general circulation at Toidze's last known address, and once in The Legal Intelligencer, a newspaper of general circulation in Philadelphia. Again, Toidze failed to respond to BK's complaint.

In May 2010, BK requested entry of Toidze's default, which the Clerk of Court granted on May 11, 2010. In August 2010, BK moved for entry of default judgment pursuant to Fed. R. Civ. P. 55(b)(2). As relief, BK sought transfer of a 17.52% equity interest in Maya's Meals or, in the alternative, $377,275.95 in damages based upon a quantum meruit theory. In a Memorandum and Order dated November 4, 2010, the District Court found that the still-pending Connecticut Action presented "questions regarding the appropriateness of . . . compelling Toidze to transfer a 17.52% equity

4

interest in Maya's Meals to BK." (App. at 5.) Accordingly, the District Court ordered BK to file a memorandum addressing, *inter alia*, the nature of the relief requested in the Connecticut Action and whether any of the parties to the Connecticut Action were necessary parties to this litigation. Notably, the District Court also directed BK to file a copy of its November 4th Order in the Connecticut Action and to provide a copy of that order to all parties to that action, including Toidze. BK complied with this directive by sending the Order, along with its complaint in this action, the summons, and its motion for default judgment to Toidze at both the physical and email addresses that Toidze had provided in the *pro se* brief she had filed in the Connecticut Action in October of 2010.

On October 11, 2011, the District Court denied BK's claim to an equity interest in Maya's Meals, but granted default judgement on BK's quantum meruit theory. On February 22, 2012, after referring the case to a Magistrate Judge to conduct a hearing on the amount of damages to be awarded, the District Court entered judgment in BK's favor in the full amount sought, $377,275.95.

Almost a year later on February 14, 2013, Toidze filed a Motion to Vacate Judgment pursuant to Fed. R. Civ. P. 55(c) and 60(b) claiming that: (1) publication in Canada was improper and conducted either in error or bad faith; (2) service in Russia, where she resided at the time this suit initiated, is governed by the Hague Convention and must be executed by the Russian Ministry of Justice; (3) the District Court lacked personal jurisdiction over her; and (4) if jurisdiction was proper, then the judgement should be vacated and service completed as per the requirements of the Hague

5

Convention. The motion was referred to a Magistrate Judge, who recommended it be denied. The District Court adopted the Magistrate Judge's recommendation over Toidze's objections, finding that it had personal jurisdiction over Toidze, that service was proper and complied with due process, and that she had failed to present sufficient evidence to justify vacating the default judgment. This appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. Where, as here, a party claims that the District Court lacked personal jurisdiction over her and that an entry of default judgment is void pursuant to Rule 60(b)(4) because the complaint was never properly served, our review is plenary. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008); *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *United States v. One Toshiba Color Television*, 213 F.3d 147, 156 (3d Cir. 2000). In all other respects, we review the District Court's denial of Toidze's Rule 55(c), 60(b)(3), and 60(b)(6) motions for abuse of discretion. *Budget Blinds*, 536 F.3d at 251; *Farnese v. Bagnasco*, 687 F.2d 761, 765 (3d Cir. 1982).

## III.

Toidze first contends the District Court lacked personal jurisdiction over her. Because BK relies on specific jurisdiction only, we must determine whether BK's "claim is related to or arises out of [Toidze's] contacts with the forum." *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984).

6

This breach of contract action stems from Toidze's retainer agreement with, and year-long legal representation by, a Philadelphia law firm. We agree with the District Court that personal jurisdiction is proper because Toidze met with BK's lawyers in Philadelphia on multiple occasions, signed a retainer agreement with BK knowing it was a Philadelphia law firm, and communicated extensively with BK in connection with the Connecticut Action. Accordingly, the District Court properly exercised personal jurisdiction over Toidze.

Turning to Toidze's claim of deficient service of process, Fed. R. Civ. P. 4(f) governs the service of individuals located outside of the United States. It permits service of process to be accomplished "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents [in Civil and Commercial Matters]", Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. When a defendant's address is unknown, as is the case here, the Hague Convention "shall not apply." *Id.* In this context, Rule 4(f)(2) dictates that service may be effectuated "by a method that is reasonably calculated to give notice . . . as prescribed by the foreign country's law for service." Both under the Federal Rules of Canada and the Rules of Civil Procedure for Ontario Courts, service upon an individual is satisfied by personal service. Can. Fed. Cts. R. 128; Ontario Sup. Ct. J. R. Civ. P. 16.02. Nevertheless, when personal service "cannot practicably be effected," the court may order substitute service. Can. Fed. Cts. R. 136; *see* Ontario Sup. Ct. J. R. Civ. P. 16.04 (when "it is impractical for any reason to effect

7

prompt service of an originating process or any other document required to be served personally or by an alternative to personal service under these rules," a court may order alternative service). Such service has been explained by Ontario courts to "include publication in a newspaper in the defendant's locality." *CGC Holding Co., LLC v. Hutchens*, No. 11-CV-01012, 2011 WL 2559807, *3 (D. Colo. June 28, 2011) (quoting *Niemi v. W. Assurance Co.,* 2011 ONSC 958, para. 9 (Can. Ont. Sup. Ct. J.)); *Chambers v. Muslim* (2007), 87 O.R. 3d 784, para. 13 (Sup. Ct.).

In this case, service of process by publication was reasonably calculated to provide Toidze notice. She has failed to produce any evidence that would indicate BK knew or reasonably should have known she had moved to Russia. BK attempted to personally serve her at her last known Canadian address and her son's address. Toidze represented in the Connecticut Action that she lived at her son's address in Richmond Hill, Canada. Additionally, queries to the Canadian Post authorities, internet searches, emails, and cell phone calls all yielded negative results.

At oral argument before the District Court, Toidze's counsel conceded that BK, "in good faith, thought that [Toidze] resided in Canada. Otherwise, they wouldn't have attempted to serve process in Canada." (App. at 73-74.) Although Toidze argues that several individuals knew she had moved to Russia, no credible evidence, save for her bare assertions, has been presented to support this claim. We agree with the District Court that BK made good faith and practical efforts to personally serve Toidze, and the

8

alternative service by publication at her last known address, authorized by Canadian law, was reasonably calculated to provide her notice.

Toidze also argues that the default judgment should be vacated under Rule 55(c). As recognized by the District Court, we consider that argument in light of the factors announced in *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985), which include "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." We agree that vacating the judgment would prejudice BK given the age of this case. We also agree that Toidze does not have a meritorious defense. Finally, we do not discern error in the District Court's finding that her default was intentional. In finding her conduct in ignoring this action to be culpable and not merely negligent, the District Court noted that BK emailed Toidze at mayatoidze@gmail.com in an attempt to notify her of the pending litigation. Despite her claim that this email address was "abandoned," her present counsel used that address to communicate with her in September 2012, long after BK had emailed Toidze at the same address in November of 2010. (App. at 119.) The District Court did not abuse its discretion in denying Toidze's Rule 55(c) motion to vacate the default judgment.

Toidze further contends that she is entitled to relief under Rule 60(b)(3). That rule allows the court to vacate a judgment that has been obtained through fraud or other misconduct and such misconduct "prevented [her] from fully and fairly presenting [her] case." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983). We agree with the

9

District Court that she did not demonstrate "that the alleged problems with [BK]'s representation in the Connecticut [Action] in any way impacted her ability to participate in and present her case." (App. at 118.)

Toidze's final argument is that the default judgment will result in a significant hardship because BK's services "had negative value" and "judgments by default are not favored." (Appellant's Br. at 46-47.) "Rule 60(b)(6) relief from judgment is only granted in extraordinary circumstances. It is available where the party seeking relief demonstrates that extreme and unexpected hardship will result absent such relief." *Jackson v. Danberg*, 656 F.3d 157, 165-66 (3d Cir. 2011) (citations and quotations omitted). No extraordinary circumstances exist in this case to justify vacating the default judgment. We are satisfied that the District Court did not abuse its discretion in denying Toidze's motion to vacate pursuant to Rule 60(b)(3) and 60(b)(6).

## IV.

For the reasons discussed above, we will affirm the District Court's order denying Toidze's motion to vacate the default judgment.